STATE OF MAINE *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot.   Opinion August 1, 1884.

*Railroad crossings.  Accidents.  Contributory negligence.  Damages.  Jury.*

It is settled law in this state that in actions against railroad companies for injuries to persons, whether in form civil or criminal, the burden is upon the party prosecuting to show that the person injured or killed, did not by his want of ordinary care contribute to produce the accident.

'One in the full possession of his faculties, who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but is in fact, struck by it, is *prima facie* guilty of negligence; and, in the absence of a satisfactory excuse, his negligence must be regarded as established.

In a prosecution, by indictment, against a railroad company for negligently causing the death of a person at a crossing, the amount of the forfeiture between the minimum and maximum sums fixed by the statute, should be assessed by the jury.

ON EXCEPTIONS and motion to set aside the verdict.

Indictment against the Maine Central Railroad Company for negligently causing the death of Adoniram Judson Pickard at a railroad crossing in Carmel, on the twenty-sixth day of December, 1882, prosecuted for the benefit of his widow and children.

The opinion states the material facts.

*J. Hutchings,* and *F. H. Appleton,* county attorney, for the State, upon the question of contributory negligence, argued:

The next question is, was Doct. Pickard in the exercise of due care and diligence when he was killed? Upon this branch of the case, the first that naturally arises is, — upon whom is the burden of proof, to show care and diligence by him, or the want of it? — The law required him to exercise ordinary care — such care as a prudent man would ordinarily exercise in like circumstances; or, to state it in a negative form, the law requires that he should not have been negligent or careless. The statute upon which this prosecution rests, in requiring care and diligence by the person killed, in order to a recovery, did not intend to set up any new rule of evidence, or any rule of evidence at all. It meant simply to recognize and apply the common law doctrine of contributory negligence.

Upon whom then is the burden, at common law, to prove or disprove contributory negligence in the plaintiff, or the person represented by the plaintiff. Care and diligence is the rule in human conduct, negligence the exception. Ordinary care, by its very terms, imports that it is such care as men ordinarily, generally, exercise.

The ordinary conduct, character, and experience of men are some of the grounds upon which presumptions rest. A man is presumed to be sane — to be innocent of crime — to love life. See Wharton on Negligence, § 1247 ; to act in good faith ; to be of good character ; to be legitimate, if born in a civilized country. These, and many other presumptions recognized by law, and relied upon by parties, change the burden of proof; or, to speak more accurately, stand in place of proof. These presumptions rest upon the above named grounds. They are in accordance with the general rule of conduct and experience ; all of them, however, are subject to exceptions, and some of them to very numerous exceptions.

Having proved the accident and death, we cannot rest there ; we must next prove that the defendant corporation, or its servants, were negligent or careless. To require this is, in effect, though not in words, to presume the railroad and its servants diligent and careful. If the burden is upon us to go further and also prove, before we may rest our case, that Doct. Pickard was careful and diligent, this, in effect, is to presume that he was careless.

There is high authority for saying that the burden is on the defendant to prove contributory negligence, unless such negligence already appears in the plaintiff's case. Prof. Wharton, in his book upon Negligence, § 423, says — "That the plaintiff, by his negligence, so contributed to the injury as to break the casual connection between such injury and the defendant's act, is a matter of defence which, in the ordinary process of proof, it is incumbent on the defendant to make out." *Thompson* v. *The North Missouri R. R.* 51 Mo. 190.

In *C. & P. R. R. Co.* v. *Rowan*, 66 Penn. St. 393, THOMPSON, C. J., for the court, says — "As the love of life and the instinct of preservation are the highest motive for care in any reasoning being, they will stand for proof of care until the contrary appears."

In *R. R. Co.* v. *Gladmon*, 15 Wallace, 401, Mr. Justice HUNT, in delivering the opinion of the court, said, "While it is true that the absence of reasonable care and caution on the part of

one seeking to recover for an injury so received, will prevent a recovery, it is not correct to say that it is incumbent on him to prove such care and caution. The want of such care, or contributory negligence, as it is termed, is a defence to be proved by the other side. "

The decision upon this point, in the 15th of Wallace, was approved in *Indianapolis & St. Louis R. R. Co.* v. *Horst,* 3 Otto, 291. The cases of *Johnson* v. *Hudson River R. R. Co.* 20 N. Y. 65; *Newson* v. *N. Y. C. R. R. Co.* 29 N. Y. 383; *Hegan* v. *8th Ave. R. R. Co.* 15 N. Y. 383; *State* v. *M. & L. R. R.* 52 N. H. 528, and *Oldfield* v. *N. Y. & H. R. R. Co.* 3 E. D. Smith, 103; *Cassidy* v. *Angell,* 12 R. I. 447 (1879), are in point and in favor of our contention. In Abbott's Trial Ev. in a note on page 595, containing a full citation of authorities, it is stated that the rule for which we here contend is also applied in the states of Alabama, California, Maryland, Minnesota, New Jersey, Ohio, Texas and Wisconsin, besides the states above named. In *Foster* v. *Dixfield,* 18 Maine, 380, SHEPLEY, C. J., for the court, says, " It may well be doubted whether this ( proof by plaintiff of diligent care ) should be required in all cases. "

If, however, it be claimed that the burden of proof upon the question of contributory negligence is not an open question in this state, we reply, that the court has not decided that the burden is upon the prosecution to show diligence and care in cases of instant death; and upon this question of the burden of proof there are reasons for distinguishing between the class of cases in which an action is given for the death itself, and only when the death is instantaneous, and the other and much more numerous class or classes of cases where the injured party survives, and the action is for the loss and injury in life. In the latter class of cases, the plaintiff, knowing the facts, may, especially upon this issue, greatly assist in the preparation for trial, and, what is of much more consequence, he may come into court and tell the story of the accident. In the former class of cases, the victim is dead and can do nothing.

According to the decided cases, the diligence required consists specially, in the first instance, at least, in the use of one's eyes

and ears.   The traveller approaching a crossing is, ordinarily, to
a reasonable extent, expected to look and listen for approaching
cars.   Accidents which result in immediate death to travellers at
railroad crossings, happen both night and day.   Some of them,
no one, unless you except the victim himself, sees at all.   Many
of them no one sees under circumstances so as to tell how they
happened.   If there are by-standers, they will not ordinarily
know whether the person killed did listen and look or not.   It
is not negligence, nor negligence *per se,* not to stop one's team
and then look or listen before going on to a railroad crossing.
*Plummer* v. *R. R. Co.* 73 Maine, 591, and cases there cited.

In cases of instant death, where the person killed was in the
exercise of due care and diligence, the wrong of the defendants,
upon which the prosecution is grounded, destroys the best
witness of the care and diligence exercised by the person
killed, and, in most cases, makes it extremely difficult to
produce satisfactory evidence of diligence and care.   In such
cases, therefore, to put upon the prosecution the burden of
proving that the person killed was exercising care and diligence,
is hard and harsh.   If the burden to disprove care and diligence
in the person killed is put upon the defense, it will relieve
courts of much of the embarrassment that has been felt in many
of these cases.

The conflict, however, between the courts, that take different
views upon this question of the purden of proof, is, perhaps, as
said by Wharton, only superficial.   Wharton's Negligence, §
426.   It is probably of not very much consequence in the case
at bar.   The cases all concur in this, that diligence and care in
the person injured or killed may be proved by circumstances;
how slight circumstances, is well shown in the before cited case
of *Foster* v. *Dixfield.*   The cases generally agree in this, too,
that, especially in cases of instant death, very slight evidence of
diligence and care in the person killed is sufficient.

Doct. Pickard was, and had been for years, a regular medical
practitioner.   His age, his family, his business, all repel the
charge that he was careless.   In *Thomas* v. *D. L. & W. R.
R. Co.* 19 Blach. C. C. Rep. 529 (1881), the court say, "The

absence of any fault upon the part of the defendant may be inferred from the circumstances in connection with the ordinary habits, conduct, and motives of men. The natural instinct of self preservation, in the case of a sober and prudent man, stand in the place of proof,"—citing, *Johnson* v. *The Hudson R. R. Co.* 20 N. Y. 65.

Neither the time of evening—about half-past six,—nor the kind of weather—for it was a pleasant night,—nor the distance he was going—about two miles,—nor the errand upon which he went—which was to bring home one of his little children from a visit to a friend's house,—would induce haste, hurry, or risk. With a wife and four children whom he had just left, and going to get a fifth child to carry home with him, it is incredible that he should knowingly risk or be careless of his own life.

*Wilson and Woodward*, for the defendant, cited upon questions discussed in the opinion : *St. L. A. & T. H. R. R. Co.* v. *Manly*, 58 Ill. 309 ; *Merrill* v. *Hampden*, 26 Maine, 240 ; *Dickey* v. *Maine Tel. Co.* 43 Maine, 496 ; *Brown* v. *E. & N. A. R. Co.* 58 Maine, 387 ; *Warner* v. *N. Y. C. R. R. Co.* 44 N. Y. 471 ; *Butterfield* v. *Western R. R. Co.* 10 Allen, 532 ; *Allyn* v. *B. & A. R. R. Co.* 105 Mass. 77 ; *Hinckley* v. *Cape Cod R. R. Co.* 120 Mass. 257 ; *Com.* v. *B. & L. R. R. Cor.* 126 Mass. 69 ; *Park* v. *O'Brien*, 23 Conn. 345 ; *Cordell* v. *N. Y. C. & H. R. R. Co.* 75 N. Y. 332 ; *Hart* v. *Hudson River Bridge Co.* 84 N. Y. 62 ; Pierce on Railroads, 298-300, 344-5 ; *Gaynor* v. *O. C. & N. R. Co.* 100 Mass. 208 ; *R. R. Co.* v. *Houston*, 95 U. S. 702 ; *Grows* v. *M. C. R. R. Co.* 67 Maine, 104 ; *Wilds* v. *H. R. R. Co.* 24 N. Y. 440 ; *Salter* v. *U. & B. R. R. Co.* 75 N. Y. 280 ; *Brown* v. *M. & St. P. R. Co.* 22 Minn. 166 ; *Com.* v. *Fitchburg R. R. Co.* 10 Allen, 192 ; *Reynolds* v. *N. Y. C. & H. R. R. Co.* 58 N. Y. 248 ; *Baxter* v. *Troy & Boston R. R. Co.* 41 N. Y. 504.

Counsel contended that the amount of the forfeiture should be fixed by the court, and argued : A forfeiture is the same as a fine, and fines and forfeitures are classed together. See § 13, c. 131, R. S.

In the original statute on this subject, to be found in § 2, c. 161, public laws of 1866, the penalty is called a fine, instead of a forfeiture. The change made in the revision of the statutes was only a verbal change. A comparison of the statute in this state, with the statutes of Massachusetts, may give some aid in considering the subject. See § 212, c. 112, public statutes of Massachusetts.

Two remedies are there given, either of which, but not both, may be followed. One a fine, within the limits specified in our statute, the other an action for damages, within the same limits. One of the principal reasons for giving these alternative remedies, must have been to allow a choice of tribunals to determine the amount to be paid. The legislature of this state, has chosen to give only one of the remedies, the fine or forfeiture. "A limited penalty is imposed, as a punishment of carelessness in common carriers. And as this penalty is to be recovered by indictment, it is doubtless to be greater or smaller, within the prescribed maximum and minimum, according to the degree of blame which attaches to the defendants, and not according to the loss sustained by the widow and heirs of the deceased. The penalty, when thus recovered, is conferred on the widow and heirs, not as damages for their loss, but as a gratuity from the commonwealth." *Carey* v. *Berkshire R. R. Co.* 1 Cush. 475.

"A common law action, surviving under the statute to the administrator, and an indictment under the statute, do not cover the same ground. In the former, damages for the personal injury to the deceased are alone recovered; in the latter, the purpose is to secure some compensation for the loss to them, as well as to inflict some punishment for the offence. In one, damages are recovered by the legal representatives, which in the due settlement of the estate may never come to the relatives. In the other, the amount of the fine, within the limit named in the statute, is fixed by the court, and paid to the use of the widow and children, in equal moieties, or to the next of kin, as the case may be." *Com.* v. *Metropolitan R. R. Co.* 107 Mass. 236. Here is an express declaration of the Supreme Court of Massachusetts, that the amount is to be fixed by the court.

WALTON, J.    This is an indictment against the· Maine Central Railroad Company for negligently causing the death of a person. It appears that December 26, 1882, at about half past six o'clock in the evening, Doct. Pickard of Carmel, in an attempt to cross the railroad with a horse and sleigh, was struck by a passing train and instantly killed.    A trial has been had and a verdict of guilty returned against the railroad.    The question is whether the evidence justified this verdict.    We think it did not.

It is settled law in this state that, in prosecutions of this kind, whether in form civil or criminal, the burden is upon the party prosecuting to show that the person injured or killed, did not by his own want of ordinary care contribute to produce the accident. *Gleason* v. *Bremen*, 50 Maine, 222 ; *State* v. *Grand Trunk Railway*, 58 Maine, 176.

In the case first cited it was held that the law is clear and unquestioned that the plaintiff must satisfy the jury,· as an affirmative fact, to be established by him, as a necessary part of his case, that at the time of the accident, he was in the exercise of due care.    And in the second case cited it was held, after a full and careful examination of the question, that in the trial of indictments against railroads to recover the forfeiture created by our statute for negligently causing the death of a person, " the same rules of evidence, and the same principles of law, should be applied, as in like cases when redress is sought by a civil action for damages."

We must, therefore, regard it as settled law in this state that, in this class of cases, whether in form civil or criminal, the burden of proof is upon the party prosecuting to show due care on the part of the person injured or killed, at the time of the accident ; or, in other words, that his want of due care did not contribute to produce the injury complained of.

In this case, there is not only a total want of such evidence, but the proof, as far as it goes, tends strongly to establish the contrary. ·No one witnessed the accident except the engineer and fireman on the train.    The engineer's account of the transaction is that, as he approached the crossing, and when the engine was not over fifteen feet from it, the horse came right up into the

head-light, and the pilot of the engine took right under the sleigh, and threw the deceased right up on to the head-board; that he stopped the train as soon as he could, and went forward and found the man dead upon the front of the engine. The fireman says he saw nothing till they went on to the crossing; that he then got a glimpse of a horse and saw a man come up on to the pilot. These are the only accounts we get of the transaction. How it happened that the deceased drove on to this crossing directly in front of an approaching train is left to conjecture alone.

It is claimed that no bell was rung or whistle sounded; and that, in consequence of this failure, the deceased was not apprised of the approach of the train. The evidence seems to us to preponderate most overwhelmingly in favor of the fact that the bell was rung and the whistle sounded. But suppose they were not, still, it seems to us impossible to believe that the deceased undertook to cross the track in ignorance of the approach of the train. He was a man of mature years, and in the full possession of his faculties. His sight and hearing were good. He lived in the immediate neighborhood of this crossing, and must have been acquainted with the time and speed of the trains. The evening was still, and the ground frozen, and the rumbling of the train could be heard at a great distance. The head-light was on, and the cars all lighted, and the deceased's view of an approaching train for a considerable portion of the way as he drove from his house to the crossing unobstructed. If, under these circumstances, the deceased undertook to cross the track in ignorance of the approach of the train, the inference is irresistible that he did not exercise that degree of vigilance which the law requires. He could not have used his eyes nor his ears as the law required him to use them. The fact must not be overlooked that the train was very near, as otherwise he would not have been struck by it. One in the full possession of his faculties, who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but is in fact, struck by it, is *prima facie* guilty of negligence; and, in the absence of a satisfactory excuse, his negligence must

be regarded as established.   The excuse offered in this case is not satisfactory.  The evidence so overwhelmingly preponderates in favor of the fact that the bell was rung and the whistle sounded that we can not regard the alleged negligence of the railroad company in these particulars as proved.   But if we concede that this was a question of fact for the jury, and that the court has no right to interfere with their finding, still, the inference is irresistible that the deceased did not exercise that degree of vigilance which the law requires, or he would have known of the approach of the train without these signals.   And if not ignorant of its approach (which we believe to be the fact) then the relation of cause and effect between the alleged negligence and the accident is wanting; and the verdict must be regarded as wrong upon that ground.   It is not enough to establish negligence and an accident. It must also be shown that the negligence was the cause of the accident.   An omission to ring the bell or sound the whistle could not have been the cause of the accident if the deceased had notice of the approach of the train by other means.   Our belief is that the deceased did have such notice ; that he could not have been so unobservant as to neither see nor hear the approach of that train ; and, consequently, that the alleged negligence in omitting to ring the bell or sound the whistle could not have been the cause of the accident.   But if he did not have such notice ; if he drove on to that crossing in total ignorance of the approach of a train ; then the conclusion seems to us inevitable that he must have been exceedingly negligent in the use of his eyes and his ears.   So that, whichever view we take, the verdict is clearly wrong.   In the one case the want of the relation of cause and effect invalidates it ; in the other, contributory negligence.

Similar views are expressed and similar conclusions sustained, even in those states in which it is held that the burden of proof to show contributory negligence is on the defendant.   *A fortiori* they ought to prevail, where, as in this state, the burden of proof is not upon the defendant to show contributory negligence, but upon the party prosecuting to show the absence of it.

In *Railroad* v. *Heileman,* 49 Pa. St. 60, the court held that the omission of a traveler when approaching a railroad crossing to

look and listen for approaching trains is negligence *per se;* not merely evidence of negligence, but negligence itself, and should be so declared by the court, and not submitted to the jury; that while it is true that what constitutes negligence is generally a question of fact for the jury, it is not always so; that when the law fixes the standard of duty, an entire omission to perform it, is not merely evidence of negligence to be submitted to a jury, it is negligence itself, and should be so declared by the court; that even on a common road, travelers must look out for the approach of other vehicles passing; that this is more necessary at railroad crossings, because movements upon a railroad are more rapid, and because the consequences of a collision are likely to be more disastrous; that precaution, looking out for danger, is a duty imposed by law, and that to rush heedlessly on to a crossing over which the law allows engines of fearful power to be propelled, without looking and listening for a coming train, is not merely an imperfect performance of duty, it is an entire failure of performance.

And in *Railroad* v. *Beale*, 73 Pa. St. 504, Mr. Justice SHARSWOOD, in delivering the opinion of the court, says that there never was a more important principle settled than that which declares that the omission to look and listen for the approach of trains before attempting to cross a railroad track, is not merely evidence of negligence to be submitted to a jury, but negligence *per se,* and to be so declared by the court; that it is not so important to the railroad companies as to the traveling public; that the omission of this duty often results in collisions by which the lives of hundreds of passengers are lost; and that travelers should be taught that the performance of this duty is due, not only to themselves, but to others also.

In *Railroad* v. *Crawford*, 24 Ohio St. 631, the law upon this subject seems to us to be stated accurately. It is there said that unquestionably ordinary prudence requires a person in the full enjoyment of his faculties, before attempting to pass over a known railroad crossing, to use his faculties of hearing and seeing for the purpose of discovering and avoiding danger from an approaching train; and that the omission to do so, without a

reasonable excuse therefor, is negligence, and will defeat an action to recover for an injury to which such negligence contributed.

In *Dascomb* v. *Railroad*, 27 Barb. 221, it is said in a case very similar to the one we are now considering, that when negligence is the issue, it must be a case of unmixed negligence; that this rule is important, salutary in its effects, and should be maintained in its purity; that the careless are thereby taught that if they sustain an injury to which their own negligence has contributed, the law will afford them no redress.

In *Wilcox* v. *Railroad*, 39 N. Y. 358 (a case in every essential particular like the one now under consideration), the court held that when one is killed in attempting to cross a railroad track within the limits of a public highway, and at a public crossing, if it appear that the deceased would have seen the approaching cars, in season to have avoided them, had he first looked before attempting to cross, it is to be presumed that he did not look; and that, by omitting so plain and imperative a duty, he will be deemed to have been guilty of negligence, which precludes a recovery; that in crossing a railroad track ordinary sense, prudence, and capacity, require a traveler to use his ears and eyes so far as he has an opportunity to do so, and a failure to do so, is negligence sufficient to preclude a recovery for any injury he may receive, in case of accident; and that the negligence of the company in not ringing the bell or sounding the whistle, is no excuse for the traveler's neglect. After citing many authorities, Mr. Justice MILLER said: The effect of the cases cited is to sustain the principle that, where the negligence of the party injured or killed contributes to produce the result, he can not recover; and that the omission of the company to ring the bell or sound the whistle near the crossing of a highway does not relieve the person who is about to pass over the highway from the obligation of employing his sense of hearing and seeing, to ascertain whether a train is approaching.

In *Railroad Company* v. *Houston*, 95 U. S. 697, it was held that the omission of the engineer in charge of a railroad train to sound its whistle or ring its bell does not relieve a

traveler from the necessity of ascertaining by other means whether or not a train is approaching ; that negligence of the employees of the company is no excuse for negligence of the traveler ; that the traveler upon the highway is bound to listen and to look, before attempting to cross a railroad track, in order to avoid an approaching train, and not to go carelessly into a place of possible danger ; that if he omits to look and listen, and walks thoughtlessly upon the track, or if looking and listening, he ascertains that a train is approaching, and instead of waiting for it to pass, undertakes to cross the track, and in either case receives an injury, he so far contributes to it as to deprive him of all remedy against the railroad company ; that if one chooses to take risks he must suffer the consequences ; that they can not be visited upon the railroad company ; that in such cases it would not be error to instruct the jury peremptorily to return a verdict for the defendants.

The cases in which similar views are expressed are very numerous. But the soundness of the views expressed in the cases already cited, is so self-evident, that we deem it unnecessary to cite other cases to support them. It will be seen that it is not important to determine whether Doct. Pickard's negligence consisted in not ascertaining that a train was approaching, or in knowingly attempting to cross in front of it. In either case, it defeats a recovery. And in the latter case, for the further reason that it destroys the relation of cause and effect between the alleged negligence of the defendants and the accident.

One other question remains for consideration ; and that is, whether the amount of the forfeiture in this class of cases shall be assessed by the court or the jury. We think it should be assessed by the jury. It seems to be uniformly held, both in England and in this country, that when damages are given for the death of a person, they are to be measured by the pecuniary loss sustained by those to whom the damages are given. This of course raises an issue of fact in relation to which the evidence may be conflicting. It is therefore a fit question to be submitted to a jury. Besides, if it is not submitted to the jury, two trials

may be necessary, one to ascertain the guilt of the defendant, and the other to ascertain the amount of the forfeiture; for the judge who tries the case to the jury may not be the one to render judgment in the case; and the latter can not assess the damages or forfeiture without first hearing the evidence upon the question of pecuniary loss; and, in some cases, the latter may be the more important of the two trials. It is therefore the opinion of the court that the amount of the forfeiture, between the minimum and maximum fixed by the statute, should be assessed by the jury.

*Motion sustained and the verdict set aside.*

PETERS, C. J., DANFORTH, VIRGIN and LIBBEY, JJ., concurred.