THOMPSON & FORD LUMBER CO. v. THOMAS.*

(Court of Civil Appeals of Texas. Galveston. April 6, 1912. Rehearing Denied May 2, 1912.)

1. DAMAGES (§ 132*) — MEASURE — PERSONAL INJURIES.

A verdict of $20,000 was not excessive for a man 28 years of age, earning $100 a month, with good prospects of advancement, where one leg was crushed and broken, so that it had to be amputated twice, the other leg injured, and he was confined in the hospital for several weeks.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

2. RAILROADS (§ 400*)—INJURY TO LICENSEE— QUESTIONS FOR JURY.

In a licensee's action for injuries from being struck by a train while he was walking upon the track, evidence held sufficient to present an issue as to the exercise of ordinary care by the plaintiff to discover the approach of the train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

3. RAILROADS (§ 400*)—INJURY TO LICENSEE— CONTRIBUTORY NEGLIGENCE—WALKING UPON TRACK.

A licensee, injured by a train while walking on the track and making due use of his senses of sight and hearing to discover the approach of the train, is not, as a matter of law, guilty of contributory negligence, barring his recovery, merely because there is some danger in his walking upon the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

4. RAILROADS (§ 400*)—INJURY TO LICENSEE— CONTRIBUTORY NEGLIGENCE—WALKING UPON TRACK.

A licensee, injured by being struck by a train while walking upon the track, is not as a matter of law, guilty of contributory negligence, merely because there is a way along the side of the track, or elsewhere, by which he could possibly travel.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

5. RAILROADS (§ 400*)—INJURY TO LICENSEE— CONTRIBUTORY NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

In a licensee's action for injuries from being struck by a train while he was walking upon the track, evidence held to raise an issue for the jury as to whether the plaintiff, in so walking, acted as a person of ordinary prudence would have acted in the same circumstances.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

6. RAILROADS (§ 400*)—INJURY TO LICENSEE— CONTRIBUTORY NEGLIGENCE—SUBMISSION OF ISSUE.

Where, in a licensee's action for injury from being struck by a train while he was walking upon the track through a cloud of steam, he testified that he looked and listened for the train, although he had reason to believe it was not near, and that the defendant would give the customary signals. if it were approaching, which signals would have protected him from danger, it was proper to submit the issue of contributory negligence to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

7. TRIAL (§ 296*) — INSTRUCTIONS — ERROR — CURE BY OTHER INSTRUCTIONS.

In a licensee's action to recover for being struck by a train while walking upon the track through a cloud of steam, an instruction as to the negligence of a railroad company in running its "train into the steam without the bell being rung or its whistle blown," but which made no allowance for these signals being given in time to warn the plaintiff before the train got to the steam, if erroneous, was harmless, where the court charged the jury in other instructions that they should return a verdict for the defendant, if they found that the bell was rung or the whistle blown at the same time and place as they usually were.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court June 26, 1912.

8. TRIAL (§ 296*) — INSTRUCTIONS — CURE OF ERROR.

In an employé's action for injuries from being struck by a train while walking upon the track, an instruction that he was rightfully walking there, if the defendant's employés had express or implied permission to so use the track, was not open to the objection that it stated that it was not the plaintiff's duty to select a different route, although there were other convenient and successful routes, especially where the court elsewhere fully charged the jury upon the plaintiff's duty as to taking another route.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

9. TRIAL (§ 296*) — INSTRUCTIONS — CURE OF ERROR.

An instruction that the plaintiff could not recover if he was guilty of negligence in any one of the particulars charged against him, and "such negligence contributed to his injuries as a proximate cause thereof," was not objectionable for making the issue presented conditional on the finding presented by the quoted words, because any of the negligent acts charged must of necessity have contributed proximately to the injury, especially where the court in other charges stated that the plaintiff could not recover if he was guilty of negligence in the particulars charged, naming them, and omitted the objectionable condition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

10. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.

It was not error, in a personal injury case, to refuse a requested instruction which had been already given by the court in different language.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

11. NEGLIGENCE (§ 65*) — "CONTRIBUTORY NEGLIGENCE."

"Contributory negligence" is an act or omission by the plaintiff amounting to a want of care, and which, concurring or co-operating with some negligent act of the defendant, is the proximate cause of the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 83, 94; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

12. APPEAL AND ERROR (§ 216*)—PRESENTATION BELOW—REQUEST FOR SPECIAL CHARGE —"PROXIMATE CAUSE."

If one desires to save an objection to an instruction that proximate cause is that which naturally produces the event, and without which the event could not have happened, because it omits the condition that the result must be such as a person of ordinary prudence should have foreseen, he must request a special charge upon the matter (citing 6 Words and Phrases, 5760).

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

13. APPEAL AND ERROR (§ 1003*)—QUESTIONS OF FACT—PREPONDERANCE OF EVIDENCE.

The question of where lies the preponderance of evidence is for the jury in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by B. F. Thomas against the Thompson & Ford Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lane, Wolters & Storey, J. L. Little, and Crook, Lord & Lawhon, for appellant. D. F. Singleton and Smith, Crawford & Sonfield, for appellee.

REESE, J. This is an action brought by B. F. Thomas against the Thompson & Ford Lumber Company to recover damages for personal injuries, alleged to have been suffered by him through the negligence of the Lumber Company. A trial, with the assistance of a jury, resulted in a verdict and judgment in favor of plaintiff for $20,000. Motion for a new trial having been overruled, defendant prosecutes this appeal.

The cause of action, as stated in plaintiff's petition, is substantially as follows: "The defendant operates a large sawmill and lumber business at Grayburg, in Hardin county, Tex., and operates a railroad, commonly known as a tram, which extends from defendant's skidway along by defendant's millhouse and out into the forest several miles. That plaintiff was, on or about the 29th day of April, 1910, an employé of the defendant company; and that, in order to go from his home to the place provided by the defendant for him to work, it was necessary that he pass down the track of said railroad and by defendant's millhouse, which was located near and on one side of said railroad, the said railroad being the only passageway from his said house to said place of work, and it being the way used by the employés of the defendant living in the vicinity where plaintiff lived, and said railroad was so used as a passageway with the knowledge, acquiescence, and consent of the defendant by the company's employés and the public. That at the point where said railroad passed the mill, as aforesaid, the defendant's steam exhaust pipes extended out horizontally from said house to within a few yards of said railroad, so that the escaping steam formed a dense cloud and mist over said railroad so dense that the vision of those passing through was limited, so that they could see but a few feet ahead while passing through same, but that at that point, on account of the dump and other conditions, there was no other way of passage to and from plaintiff's home and vicinity and his place of work. That on or about the said 29th day of April, 1910, while plaintiff was approaching his place of work and walking through said cloud of steam, or was about to enter same, and while assuming, as he had a right to do, that he would be properly warned of any train attempting to run through said steam, according to defendant's custom to give warning of the approaching of its trains to such place, he was, without warning or signal of any kind, and without knowledge of its approach, struck by one of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

·defendant's trains running on said railroad from the direction of the forest, and which knocked him down and cut off his right leg, ·or injured it so that it became necessary to ·cut it off, and otherwise injured plaintiff, as hereinafter shown. That plaintiff's injuries were directly and proximately caused by the negligence of the defendant, in this, to wit: By running said log train into said ·steam, knowing that the railroad was constantly used by plaintiff and the other employés of the defendant, and knowing that ·one so using said railway could not see such train moving on said track as this train was moved thereon, and could not hear the same ·on account of the noise at said place, without blowing the whistle or ringing the bell, ·or both, and without warning or signal of any kind; for plaintiff says that, had the whistle been blown or the bell rung as the train was approaching and entering into said ·steam, plaintiff could and would have heard the warning, and could and would ·have ·avoided his injuries."

Defendant, in addition to a general denial, pleaded specially contributory negligence and ·assumed risk, alleging that plaintiff knew of ·the location of the exhaust pipes and the conditions as to escape of steam and the ·effect thereof; that defendant ran its log ·train over said track daily about the same ·time and in the same way as when plaintiff ·received his injuries; and that plaintiff was ·guilty of negligence, proximately causing or ·contributing to his injuries, in walking down the track at the time he was injured, and in the circumstances then existing, and as·sumed the risk thereof. It was further aver·red that there was a safe and convenient way of travel from plaintiff's home to his place of work in the mill, either along a beaten path by the side of the track, or by means of a way which led to a door in the ·east end of the mill, or to another door on ·the north side of the mill; and that this was well known to plaintiff, who voluntaril·ly chose, instead of using the aforesaid safe and convenient ways of travel from his home to his place of work in the mill, to walk along the railroad, and between the rails, knowing the danger thereof, and in this· was guilty of contributory negligence, ·and assumed the risk of the use of said railroad track for the purpose referred to.

The evidence authorizes the following con·clusions of fact:

Appellee, Thomas, at the date of his in·jury, to wit, on April 29, 1910, was in the ·employ of the Thompson & Ford Lumber Company in their mill at Grayburg, in Har·din county, Tex. Appellant owned and operat·ed a sawmill at said place, and, in connec·tion therewith, owned and operated a tram·road, or railroad, running from the mill sev·eral miles into the forest, over which it hauled ·logs loaded on logging cars and drawn by an engine operated with steam. ·This railroad ·or tramroad started a little east of the mill, where the logging pond was located, and ran thence along the south side of the mill, down past the shops west of the mill, and the Y connecting it with the Southern Pacific Railroad, about 300 or 400 yards west of the mill, and thence on into the forest. Sometimes the logging train came in in the afternoon or evening with a load of logs for the mill, and stopped about 400 yards west of the mill, and early in the morning brought the logs up past the mill to the logging pond east of the mill; but about as often it came in to the log pond and unloaded in the evening, and went immediately to the forest in the morning, without coming to the mill. A little east of the center of the mill, certain steam pipes ran out from the mill and near to the track, the purpose of such pipes being to convey the exhaust from the boilers; and the effect was that, while the mill was in operation, a dense cloud of vapor or steam covered the railroad track at and near the end of these exhaust pipes, so that one on the track could not see an engine or cars approaching from the opposite side of such cloud of steam. When the mill was in operation, the machinery made a considerable noise.

The place where Thomas worked in the mill was reached through a door on the south side, west of the steam referred to. A plank walk had been made leading from the track to this door. The evidence shows that, with the knowledge and permission of the Lumber Company, employés of the mill were in the habit of using this railroad track as a walkway in going to and from the mill, and generally in traveling to and fro about the mill grounds, whenever convenient for them to do so. Thomas had, at the date of his injuries, been in the employ of the Lumber Company for three years, and was thoroughly acquainted with the conditions in and about the mill. He lived east of the mill; and it had been his daily custom, together with other workers in the mill living in that vicinity, in going to and from his work in the mill, to strike the railroad east of the mill and walk down the track to the door referred to. It is contended by the Lumber Company that the great preponderance of the evidence shows that there was a safe and convenient path along the south side of the railroad track, which most of the men used, and which Thomas could and should have used, if he chose to go along the railroad track to his place in the mill; and also that it was shown that there was a door in the east end of the mill to which there was a safe and beaten path, and that this also afforded Thomas a safe and convenient way of going from home to his place of work in the mill, which he should have used, instead of the unsafe walk down the track between the rails. This issue was submitted to the jury, and their verdict was against this contention. As the evidence is sufficient to support the

verdict on this issue, we find that there was no safe and convenient path on the side of the track where Thomas was walking; that on either side the way was obstructed by logs, bricks, and other trash, and was wet and muddy; and that for that reason employés of the mill using this way walked on the track between the rails, or on the ties outside of the rails. There was sufficient evidence to establish these facts, and the jury settled the conflict in appellee's favor. We make the same finding for the same reason as to the entrance into the mill through the door in the east end. There was some evidence that this way was not used at all as an entrance to the mill; that pieces of logs, bark, and other trash were continually falling or being thrown from above in and about this entrance, and the way was obstructed, and was neither safe nor convenient. There was a skidway, used for hauling logs into the mill from the log pond, which ran above this door. The evidence was substantially to the same effect as to the way through the door on the north side.

[1] On the morning of April 29, 1910, appellee and his brother-in-law, J. W. McCowan, started from their homes east of the mill, to their work in the mill. When they reached the railroad, east of the mill, they walked down the track; appellee walking between the rails, and McCowan along the ends of the ties outside of the rails. Appellee had heard the whistle of the engine down about the Y; but, as it was the kind of whistle that was blown when the logging train started for the woods, he supposed the train had gone to the woods. As the steam aforesaid completely obscured the view of the track, appellee, not feeling certain that the train had gone to the woods, was looking and listening for it; and when he got, according to his testimony, to within 20 or 40 feet of the steam he began "to look and listen good." Hearing no warning of bell or whistle, nor other noise, to indicate the approach of the train, he went on, and when he got within about 6 feet of this bank of steam, across the track, the front end of a train of about seven cars loaded with logs (the engine in the rear pushing the cars) shot suddenly out of the steam, and was upon appellee before he had time to escape. He was struck by one of the logs, knocked down, his leg crushed and broken, so that it had to be amputated twice. The other leg was injured. He lay in the hospital several weeks, and his injuries were very serious. Appellee was a young man, 28 years of age, earning $100 a month, and with good prospects of advancement in his calling. McCowan, walking on the outside of the rails along the ends of the ties, was also struck by the end of one of the logs and knocked down.

The evidence was also sharply conflicting upon the issues as to whether the engine bell was rung or the whistle blown as the cars approached the mill and the place where the track was used as a walkway and the bank of steam that obscured the view of the track beyond. The jury also, by their verdict, settled this conflict in favor of appellee upon sufficient evidence to authorize the finding, which we make, that the bell was not rung nor the whistle blown, so as to attract the notice of appellee or others who might be using the track as he was using it, and as it was constantly used. It was the custom to sound the whistle or ring the bell in approaching the mill by this train, giving unmistakable warning of its approach; and appellee, when he was struck, was expecting this warning of the approach of the train, if it was coming, and, not hearing it, thought there was no danger in going ahead. It follows that the jury was justified in finding from the evidence, and we find as conclusions of fact, that the servants in charge of the engine and train were guilty of negligence in failing to give warning of the approach of the cars, by ringing the bell or sounding the whistle, under all the facts and circumstances of this case; and that said negligence was the proximate cause of appellee's injuries. They also found, and we find, that appellee was not guilty of contributory negligence, so as to bar a recovery by him, in any of the particulars relied upon by appellant. The appellee in his use of the track was not a trespasser. The injuries suffered by appellee were sufficient to justify the amount of damages awarded him by the verdict.

[2] By the first assignment of error, appellant complains that the court erred in overruling the motion for a new trial, because the great preponderance of the evidence and plaintiff's own testimony showed that he was walking along the track, when he knew that the log train backed in at about that time of each day, without listening for the approach of the train until he was within 14 feet of the approaching cars; and that he was in this, according to his own testimony, guilty of contributory negligence. The plaintiff testified, in substance, that about half of the time this car backed up to unload logs about this time in the morning, and about half of the time it came in and unloaded at night, and in the morning went straight to the forest from the point west of the mill, where it stopped; that when he heard the engine whistle at this point, which was about 400 yards west of the mill, he supposed it had gone to the woods as usual. He heard no other whistle. He further testified that, while he so thought, he still listened for the train, because he was not absolutely sure that it had gone. His testimony on this point is as follows: "I thought the train had gone to the woods. Yes; I did think so, because I heard the whistle and thought it was gone. I was looking and listening for that train. I

thought it had gone. I looked and listened for it, because a man would look and listen coming through a place he can't see. * * * As to when I commenced to look and listen for the train, well, I listened all along the track, all along after I got about 30 or 40 feet from the steam. * * * I commenced listening good when I got 20 or 30 feet from the steam. * * * Q. How were you listening before you commenced to listen good? A. Just paying attention ahead of me. Just paying attention, looking and paying attention to see if it was gone or not. * * * I did not expect the train; but a man can never be too sure going through a place like that. As to why I was looking and listening good if I was not expecting the train, well I was not expecting a train; for I thought it was gone. * * * Q. I will ask you again if you really thought you were going to meet that log train? A. No; I did not think I was going to meet the log train. I thought it was gone; but I did not know for sure. No; I did not think I was going to meet that dinky car. I did not know whether I would meet that little car or not; did not know it was running or not. As to whether I was thinking anything about it, well, I was thinking a man is liable to walk in anything there. * * * As to whether I could stop and see before I went through the steam, well, I did not stop. I did not walk as fast as I walked back up the track." He testified that he could not see through the steam; that it was the custom, when the engine approached this place, for it to give a "squealing" whistle, very loud, that could be heard all over the millyard; and that no whistle was blown and no bell rung on this occasion. We think this presented an issue as to the exercise of ordinary care on the part of appellee in using his senses of sight and hearing, as he walked along the track, to discover the approach of the cars. The assignment is overruled.

[3] The second assignment of error presents substantially the same question. Appellant's contention is not supported by the record as to the conclusive effect of the testimony on this point. It is true that ordinarily the railway track was not a safe place to walk; but the evidence presents the issue that it was constantly used by persons employed in the mill just as appellee was using it, with appellant's consent; and that this was known to those operating the engine and cars in question. While, in the exercise of due care, it was appellee's duty to use his senses of sight and hearing to discover the approach of the train, there is evidence to indicate that he did so; and that the accident was due to the failure of those operating the engine to give warning, by ringing the bell or blowing the whistle, of the approach of the cars. It is not the law that a licensee using the track as a passway, because it is accompanied with some danger, by that fact alone, as a matter of law, is guilty of contributory negligence which would prevent a recovery in case he is injured. This would put a licensee on the same footing with a trespasser.

[4] By the third assignment of error, appellant presents the proposition that it conclusively appears from the evidence that there was sufficient space beside defendant's railroad where plaintiff could have walked, and where his companion did walk at the time; and that if he had so walked he would have suffered no injury. By the fourth assignment of error, the proposition is presented that the great weight and preponderance of the evidence showed that there was a convenient and accessible pathway along the entire length of defendant's track, and by the side thereof, where the plaintiff could have walked in safety, and that it was not necessary for him to walk between the rails, and that it conclusively appears that if he had used such pathway he would not have been injured. If it be the law that a person using the railway track as a pathway by permission of the railway company (that is, a licensee as to such use), who is injured while so doing, as appellee was, must be considered guilty of contributory negligence in such use of the track, if there is a way along the side of, the track, or elsewhere, by which he can possibly travel, then appellant's contention must be sustained; and, for a like reason, in no conceivable case would such a licensee be entitled to recover. We can hardly imagine a case where it was impossible for such a person to travel by the side of the track and out of danger, or to reach his destination by some other way than by using the track. We do not understand that any of the decisions of this state have gone so far. The opinion in the case of Texas Midland Railroad Company v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, must be considered in connection with its peculiar facts. The person injured was walking on a railroad bridge, 200 feet in length. To avoid being struck by an approaching train, he jumped from the bridge, and was injured. The case seems to have been ruled upon the proposition that the danger of using the bridge as a pathway was so obvious under any circumstances, and was known by the plaintiff to be so, that the plaintiff was guilty of contributory negligence in so using it, when he was not compelled to do so. In the case of M., K. & T. Ry. Co. v. Wall, 102 Tex. 362, 116 S. W. 1140, it was distinctly held, as we understand the opinion, that it was a question for the jury as to whether a person of ordinary prudence would have walked upon or near the track upon which the train was approaching, when he could, by walking between the tracks, have been in a place of safety. The evi-

dence disclosed that the space between the tracks was surfaced up and furnished a good roadway. The facts in the case of St. Louis & San Francisco R. R. Co. v. Mathis, 101 Tex. 342, 107 S. W. 530, were that an engineer in the employ of appellant, in going from the roundhouse of the railroad company to the station at night, to catch an outgoing train, took a way usually and customarily traveled, which ran near a turntable pit. The night was dark, and there were no lights to light up the grounds at and in the vicinity of the pit. Plaintiff fell into the pit, and was injured. The negligence was alleged to be the failure to have the grounds lighted. One of the defenses was assumed risk in voluntarily choosing an unsafe way. In answer to certified questions, the Supreme Court held that the evidence disclosed that there was another way by which plaintiff could have traveled; and that, under the facts shown, the trial court should have instructed a verdict for defendant, on the ground that plaintiff knew or must necessarily have known that the turntable pit and the yards in the immediate vicinity were unlighted and dark before he received his injuries, and therefore assumed the risk. We think that case is distinguishable from the present case. The only negligence charged to the defendant company, the failure to have the grounds lighted up, was known to the plaintiff. The danger arising from this negligence was known. In the present case, the negligence charged is, not the unsafe condition of the way, but the act of running upon appellee without the warning signals. The way was not unsafe but for this act of negligence, which appellee had no reason to anticipate. A few seconds' warning would have enabled appellee to put himself in a perfectly safe place; and it was only the negligent failure to give the warning that gave rise to the danger. In this, also, the facts of this case distinguish it from the Byrd Case, supra, where the plaintiff had to jump from the bridge to save himself from the collision. In the Mathis Case, the danger under the known conditions was known to the plaintiff.

[5] In the present case, appellee had no reason to suppose that the only contingency that could make the way dangerous would happen. The negligence which gave rise to the danger could not reasonably have been foreseen. We think the facts called for a submission to the jury of the issue as to whether appellee, in voluntarily chosing to walk between the rails, acted as a person of ordinary prudence would have acted in the circumstances. There was evidence sufficient to show that the way on either side of the track was filled with all sorts of obstructions, was wet and muddy, and, as stated by some of the witnesses, was in fact unsafe. Some of the witnesses testified that there was no path or traveled way on either side of the track. There was further testimony to the same general effect as to the way by the doors in the eastern end and on the north side of the building. As for the preponderance of the evidence on these issues, the jury have settled that by their verdict. Certainly there is nothing in the extent of such preponderance in favor of appellant's contention that would indicate that their verdict was the result of anything but their honest judgment. We think the views here expressed are in harmony with the case of G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068. The assignments of error are overruled.

What we have said in disposing of the third and fourth assignments of error disposes, also, of the fifth and sixth assignments, which are overruled.

[6] The seventh assignment of error is submitted as a proposition, and is, in substance, that the great weight and preponderance of the testimony, and plaintiff's own testimony, show that he was guilty of contributory negligence in walking along the track and into the cloud of steam at the time he did, knowing all the facts and circumstances. Appellee testified that he looked and listened for the train, although he thought that it had gone to the forest, and, according to his testimony, he had reasonable ground for such conclusion. Nevertheless, to guard against any possible mistake in this, he both looked and listened for the train. He had every reason to suppose that if it came up to the mill the usual and customary signals would be given, which would have amply protected him against all danger of injury. The issue of contributory negligence was properly submitted to the jury and decided against appellant upon sufficient evidence. The assignment cannot be sustained.

[7] By the eighth assignment of error, appellant complains of that portion of the charge of the court instructing the jury as to the negligence of appellant in running "the train into the steam without the bell being rung or the whistle blown." The objection is that this charge made appellant guilty of negligence, although it might have given these signals before getting to the steam, and in time to warn appellee. We doubt whether the charge could have been understood by the jury as contended by appellant. Men of common sense could hardly have been misled by it. But, if it was subject to this interpretation, all harm therefrom was removed by an instruction, given at the request of appellant, in substance, that the jury should return a verdict for defendant, if they found, on the occasion of plaintiff's injury, that the bell was rung or the whistle blown at the time and place the same were usually and customarily blown

and rung when the said engine was pushing cars on the tram track up to the mill.

[8] Appellant complains, in the ninth assignment of error, of the following charge: "You are instructed that the defendant has the right to the exclusive use of its railroad track, free and clear of any use by others, but that it may relinquish such right of exclusive use to the public, or to any class of persons, such as its employés, either by giving its express permission, or by its tacit or ·implied permission, which may be established by circumstances, such as knowledge of and acquiescence in and its long, continuous use as a public passageway. If, from the evidence, you believe that the defendant's employés, as a class, had the rightful permission of the defendant to use its track, where plaintiff was hurt, as a footway, then you are charged that the plaintiff was rightfully in the use of such track, as that term has been hereinbefore defined." The ground of objection is that it authorized the jury to assume that, if the defendant had given its express or implied permission to use its railroad track, it would not be the duty of plaintiff to select a different route to his place of work, although there were other convenient and accessible routes. Standing alone, the charge is not susceptible of this construction. It dealt simply with the facts which made appellee a licensee in the use of the track, and not a trespasser.

Upon the other issue as to the duty of plaintiff to exercise ordinary care in choosing another way, if there was such, and the consequences of failure to do so, the court gave the following charge: "You are further charged that, although you may find that the defendant's employés failed to blow the whistle or ring the bell of said train as it approached the plaintiff, and were thereby negligent, still you are charged that this would not relieve the plaintiff from the duty to use ordinary care in choosing his way and proceeding toward his place of work; and if you believe that there was such a safe and convenient way, other than defendant's track, where plaintiff did walk, either along defendant's track or elsewhere, that an ordinarily prudent person would have used under the circumstances, instead of the way plaintiff did use, or if you believe that the plaintiff was guilty of negligence, as that term has hereinbefore been defined, in any other respect, then you will find for the defendant, although you may find that the defendant was guilty of negligence in any or all of the particulars alleged by plaintiff." The assignment is without merit.

[9] The court charged the jury that if they found that plaintiff was guilty of negligence in any one of the several particulars charged against him, and that such negligence contributed to his injuries as a proximate cause thereof, the plaintiff could not recover. The objection to the charge presented by the tenth assignment of error is that, if the plaintiff was guilty of negligence in any of the particulars mentioned, such negligence necessarily contributed to his injuries as a proximate cause thereof; and that it was error to submit it as an issue to be determined by the jury. To sustain this contention, appellant cited T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36, G., C. & S. F. R. R. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756, and Culpepper v. I. & G. N. R. R. Co., 90 Tex. 627, 40 S. W. 386. The distinction between the charge here objected to and those in the cited cases is so clearly shown in Railway Co. v. Lester, 99 Tex. 220, 89 S. W. 752, and Park v. Traction Co., 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100, that it is not necessary to do more than refer to the cases cited. It may be added that the charge as given does not present affirmative error. The court, both in its general charge and in a special charge, given at the request of appellant, instructed the jury, in substance, that if they found that the appellee did not act with due care for his own safety, either in the matter of choosing an unsafe way, or in failing to look and listen for the cars, they should return a verdict for defendant, omitting the objectionable condition as to such want of care contributing to the injury. The assignment must be overruled.

[10] By the eleventh, twelfth, thirteenth, and fourteenth assignments of error, appellant complains of the action of the court in refusing certain special charges requested by it. The charges were refused on the ground that the propositions stated had been substantially given in the charge of the court. The requested charges simply reiterated, in different phraseology, the principles of law embraced in the general charge, which presented clearly and comprehensively the issues of contributory negligence and assumed risk arising upon the voluntary choice of the railway track to walk upon, and the failure to exercise ordinary care in approaching the place on the track where the steam from the exhaust pipes obscured the vision of the track beyond. The court, in addition to the general charge, gave two special charges on these points at the request of appellant. It is not necessary to cite authorities to support the general proposition that it is not error to refuse requested charges which merely repeat, in different language, what has been said in the charge of the court. Under some circumstances, it is error to give such requested charges, although they state correct principles of law applicable to the issues. Pettithory v. Clarke & Courts, 139 S. W. 989. Requested charge No. 4, referred to in the fourteenth assignment of error, is substantially identical with special charge No. 2, given at the request of appellant. The assignments are overruled.

[11] In the fifteenth assignment of error, appellant complains of the definition of

contributory negligence in the charge of the court, as follows: "Contributory negligence, in its legal signification, is such an act or omission on the part of plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with some negligent act of defendant, is a proximate cause of the injury complained of." The assignment is without merit.

[12] If the definition of proximate cause, to wit, "By proximate cause is meant that which, in a natural and continuous sequence, unbroken by any new and independent cause, produces the event, and without which the event would not have happened," is subject to the criticism that it omits the further condition that the result must be such as a person of ordinary prudence should have foreseen as likely to occur, and if, on that account, it was not satisfactory to appellant, a special charge should have been requested. The definition as given has been frequently approved, and was sufficient to give the jury a fair working idea of what the law means by proximate cause. Railway v. Turner, 138 S. W. 1126; 6 Words and Phrases, 5760.

[13] Under the seventeenth and eighteenth assignments of error, appellant complains of the action of the trial court in overruling its motion for a new trial, on the ground that the great preponderance of the evidence shows that the whistle was blown and the bell rung as the cars approached the place where appellee was struck. Where lay the preponderance of the evidence, it was the province of the jury to determine. There was no such preponderance in the matters referred to as would authorize this court to set aside the verdict and the action of the trial court in refusing to do so. The assignments cannot be sustained.

The nineteenth assignment of error assails the verdict and judgment as excessive. This has been disposed of in our conclusions of fact. The verdict is quite liberal in amount; but the injuries were very severe, entailing necessarily great physical and mental suffering.

To summarize:

Appellee's right leg was cut off above the knee. He was in the hospital eight weeks, and had to have one-third of the leg reamputated, and was kept there four weeks longer. The left leg was sprained, mashed considerably, had no feeling in it for a long time, could not walk on it for a long time, and had considerable trouble with it. Now, at times, it gives him considerable trouble, especially in wet weather; but ordinarily he can use it. His shoulder was pretty badly hurt and swelled up considerably; still gives him trouble. Walking on crutches it gives him considerable trouble. His head was hurt pretty badly. His right ear was hurt badly, and it yet bleeds every now and then. He was 28 years old at the time of the injury,

was a sound, healthy man, and was earning $100 per month. Had been with the company three years; went there when they were putting down the mill, and stayed with them until he was hurt, excepting during the panic. He was a construction millwright and operating man; was learning to saw on the band saw, and was continuously studying his business.

As to the effect of the loss of his right leg on his earning capacity, he states: "It has knocked me out for life. I will never be able to follow my business any more. I will never be able to follow my position of millwright any more; and there are few things I can get to do." The assignment is overruled.

We find no error in the record, and the judgment is affirmed.

Affirmed.