ST. LOUIS, S. F. &.T. RY. CO. v. WEST et al.
(No. 8069.) †

(Court of Civil Appeals of Texas. Ft. Worth.
Jan. 9, 1915. Rehearing Denied
Feb. 20, 1915.)

1. APPEAL AND ERROR ⬅➡1169—SUBMISSION
OF UNCONTROVERTED ISSUE—REVERSAL.

For error in the submission of an uncontroverted issue contrary to Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, judgment will under some circumstances be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4531–4539; Dec. Dig. ⬅➡1169.]

2. NEGLIGENCE ⬅➡136 — TAKING CASE FROM
JURY.

Negligence is generally a question of fact, and becomes a question of law only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in the act in question, or when there is no room for ordinary minds to differ as to the conclusion from the evidence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⬅➡136.]

3. RAILROADS ⬅➡357—INJURY TO PERSON ON
TRACK—NEGLIGENCE.

A railroad is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injury to persons upon its tracks at such places and times as one of ordinary prudence might expect to find them, and whether such persons are trespassers or not is immaterial to its negligence, considered separately from the issue of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1235; Dec. Dig. ⬅➡357.]

4. RAILROADS ⬅➡381—INJURIES TO PERSON ON
TRACK—CONTRIBUTORY NEGLIGENCE—TRESPASSER.

A trespasser upon a railroad, excepting minors under the age of discretion and those mentally irresponsible, is guilty of contributory negligence as a matter of law which bars a recovery for injury by a train, in the absence of any showing that those in charge of the train discovered his peril in time to avoid injury and failed to do so, and in the absence of any justifying or excusing circumstances.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. ⬅➡381.]

5. RAILROADS ⬅➡400—INJURIES TO PERSON ON
TRACK—NEGLIGENCE—LICENSEE.

The act of going upon a railroad in pursuance of a lawful right to do so, at a public crossing, or where the railroad has expressly or impliedly licensed the act, is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ⬅➡400.]

6. RAILROADS ⬅➡381—INJURIES TO PERSON ON
TRACK—CONTRIBUTORY NEGLIGENCE—TRESPASS.

One going into an elevator shed and sitting so that both of his legs were inside the rail, and killed by defendant's car shunted on its switch into the elevator, in the absence of evidence that any one had ever used the track in such manner, so that there was no possible support for the claim that he was using it with defendant's knowledge and permission, was a trespasser, guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. ⬅➡381.]

7. RAILROADS ⬅➡381—INJURIES TO PERSON ON
TRACK—CONTRIBUTORY NEGLIGENCE.

In such case deceased, even if not a trespasser and guilty of negligence by reason of that fact, was guilty of contributory negligence as a matter of law barring a recovery, in the absence of any circumstance justifying or excusing him from voluntarily exposing himself to the known danger of being struck by cars that might be switched into the shed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. ⬅➡381.]

8. EVIDENCE ⬅➡595 — INFERENCES — WEIGHT
AND SUFFICIENCY.

In an action for the death of one killed on defendant's switching track, inferences that the trainmen, who did not testify, had told deceased when other cars were switched in earlier in the day that there would be no more switching that day, and that deceased relied on that assurance, and had never known cars to be switched without warning, and that the trainmen saw him before they shunted the car, amounted to no more than surmises or conjectures not to be given any probative force.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2444, 2445; Dec. Dig. ⬅➡595.]

9. RAILROADS ⬅➡390—INJURIES TO PERSONS
ON TRACK—DISCOVERED PERIL.

Evidence that, by the exercise of ordinary care, defendant's trainmen could have seen deceased, a trespasser, before they shunted the cars and in time to avert the accident, would not establish a prima facie right of recovery on the issue of discovered peril, since an actual discovery of the peril of deceased when the cars were shunted was a necessary predicate to liability on that ground.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. ⬅➡390.]

10. EVIDENCE ⬅➡77—FAILURE TO CALL WITNESSES—INFERENCE.

In the absence of some prima facie showing of defendant's discovery of decedent's peril, no inference in his favor could be drawn from defendant's failure to introduce its trainmen as witnesses, especially where it did not appear that their testimony was not as available to plaintiff as to defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. ⬅➡77.]

11. TRIAL ⬅➡284—INSTRUCTIONS—APPROVAL.

Where no exception was presented to a charge which affirmatively excluded a recovery upon the issue of discovered peril, plaintiff, within the provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, will be *held* to have approved such instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 683–685; Dec. Dig. ⬅➡284.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Bettie West and others against the St. Louis, San Francisco & Texas Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed, and judgment rendered for defendant.

Lockett & Rowe, of Ft. Worth, for appellant. G. R. Lipscomb, McCart, Bowlin, Terrell & McCart, and Theodore Mack, all of Ft. Worth, for appellees.

DUNKLIN, J. The elevator of the Empire Grain Company, the scene of the accident hereinafter related, is situated in a suburb of the city of Ft. Worth, a short distance

west of the main line of the St. Louis, San Francisco & Texas Railway Company, which, in that locality, runs practically north and south. The Arlington Heights boulevard runs east and west, and crosses the main line of the railway approximately 1,000 feet north of the elevator. A switch track runs through a shed on the east side of the elevator building. This track, which has a gradual slope from north to south, leaves the main track about 300 feet north of the boulevard, which it crosses, and diverges from the main track in a southwesterly direction until it reaches the elevator. The switch track was constructed by the railway company at the instance and for the convenience of the grain company in unloading grain from cars, but with the express agreement that the track, when constructed, should be owned by the railway company exclusively, and should be maintained, operated, and controlled by it.

On or about October 1, 1910, an engineer and fireman of the railway company undertook to place two cars in the shed of the elevator. To accomplish this the cars were kicked or shunted from a point north of the boulevard, and permitted to roll down the switch track to the elevator with no one in charge to control them or to give warning of their approach. In passing into the shed of the elevator these cars ran over and killed George W. West. Mrs. Bettie West, his widow, and Mrs. Winnie Thompson, his daughter, joined by her husband, Jack Thompson, instituted this suit against the railway company to recover damages which they allege they have sustained by reason of his death.

A trial of the suit before a jury resulted in a verdict and judgment in favor of the plaintiffs for the sum of $10,000, one-half of which amount later was remitted by them. From that judgment the defendant has appealed.

Plaintiffs based their claim of defendant's liability for the death upon allegations of negligence on the part of defendant's employés: First, in shunting the cars to the elevator in the manner indicated above, with no one in control of them; second, in failing to give prior warning to George W. West, who was walking upon the track at the time in ignorance of their approach; third, in the failure of said employés to avoid the accident by the use of means at their command, after they had discovered the perilous situation of West and his ignorance of the approach of the cars, in time to have averted the accident by the use of means then at their command.

The case was submitted to the jury by a general charge, and not upon special issues. The two specifications of negligence first mentioned were the only issues of defendant's negligence submitted, and the jury were expressly told that, unless a verdict should be returned in plaintiff's favor upon one or both of those issues, then they could not recover. In other words, the charge, in effect, affirmatively excluded any right of recovery upon the issue of negligence last mentioned.

Among other defenses, the railway company pleaded specially that deceased was guilty of negligence proximately contributing to his injury, in that he was a trespasser upon the track, and, further, in that at the time of the accident he was asleep upon the track with portions of his body extending across one of the rails, and was run over by the cars while in that position.

For six or seven years prior to the accident deceased had been employed at the plant of the Ft. Worth Furniture Company, situated a short distance immediately west of the elevator, serving in the capacities of watchman and team driver, and was familiar with the premises where the accident occurred. He resided within the city limits some distance east of the main line of the railway, and left his home between 10 and 11 o'clock on the morning of the accident, which was Sunday, telling his wife that he was going to the furniture company's plant to do some work. Upon this trip he drove a small wagon, and carried with him a gun and ammunition, which he borrowed from his son-in-law the same morning for the expressed purpose of shooting pigeons that were in the habit of feeding on wasted grain around the elevator. The cars passed over him, severing both legs, and mutilating other portions of his body. He was 58 years old, and in good health at the time of his death, but his hearing was slightly defective.

No witness testified that he saw the accident.

Otis Blair, 15 years old, who was introduced by plaintiffs, was the witness who saw the deceased last, prior to the accident. He testified in part as follows:

"I saw Mr. West before he was killed. He was sitting there by the chute leaning up against it, and his feet were out across the rails there. He was sitting in front of the chute like, and leaning back against the chute, which would be on the east side of the chute. He was sitting on the edge of the chute and leaning back. That would throw his body about half a foot from the ground; he was sitting on something about half a foot high. I did not measure it, I am just estimating the distance. * * * If a man had been up the boulevard and looking down the boulevard there would have been nothing to prevent him from seeing Mr. West sitting there; his body would be in the clear. I left him there and went home. After I left him I heard about him having been run over and killed. I heard that about a half an hour after I left. I was at home when I heard that. I never saw cars go down on the switch towards the elevator at all. * * * There was an engine switching there about an hour or so before. It was on the tracks, and I went right after they quit switching; we went down there, and the engine left, and we went there and came back home, and they came and switched some more. They had been switching there that morning. At that time my father's house was right straight across from the elevator north, just on across the Arlington

Heights boulevard on the north side. * * * After I left Mr. West I did not hear a train at all. I do not know anything about the cars that run over Mr. West. The switching I have testified about occurred that morning before I left Mr. West. I stayed there with him about ten minutes. I was raking up some feed for little chickens. While I was there I did not see engine and cars passing along there anywhere. * * * When I last saw Mr. West he was sitting right down there in that 18 inches of space. He was sitting on the ground, but he was sitting on this 6-inch ledge there, and his back was leaning back against the surface—this sloping surface on the east side of the chute—and that nearest rail was under his legs at about the knees. All of his legs below the knees were over in the track. When he came around there and spoke to me his breath smelled like toddy that morning; I mean whisky toddy. I smelled whisky on his breath. He asked me if I had seen any pigeons around there, and I told him I had not, and he went there and sat down at that place as I have described to you. He pulled his hat over his eyes like any one would. I saw him pull his hat over his eyes and lean himself back against the sloping surface of that chute, and he said he was going to stay there until he got some pigeons, and I went on and left him. I did not see any pigeons there at that time. If there had been some, I would have seen them. I never saw him again alive. After I got home I had my dinner, and when I had gotten through eating my dinner some one came by and gave me the news that a man had been killed there, and I told papa I guessed that Mr. West got killed who was down there. The next morning you could see a little of blood on the track. That blood was right where the train struck him on the end of the ties where he stopped. It was between where his body was lying and the chute. It was between where I saw his body lying after he was dead and the point where he was when I left him alive last time. Before I went down there the first time to get the wheat the engine and crew had been there doing some switching. That was earlier in the morning. It is not a fact that Mr. West was already sleeping when I left there. He was not asleep when I left. When I left that gun was leaning up against the side of the chute right by him. I was with him about ten minutes. I was standing to him about as close as a man would walk up to another. I know what a drunk man is. He did not appear to be a drunk man. I thought he was sober; I never saw him drunk before. He appeared like he was sober before. If I had not smelled whisky I would not have known that he was drinking or thought anything about it. I spoke about him pulling his hat down. The sun was shining on him; he was sitting in the sun, and the sun was shining on him. The pigeons would light on the track when he was sitting under there waiting. I had never hunted pigeons, but I had seen some one else. The pigeon shooters would ordinarily get all around the elevator there, just follow them up— It is not a fact that Mr. West was already sleeping when I left there; he was not asleep when I left. When I left that gun was leaning up against the side of the chute there right by him, sloping side right by him."

That testimony was not contradicted by any witness.

J. A. Cameron, a witness for defendant testified:

"At the time I saw Mr. West there that Sunday he was rather intoxicated; he was staggering, and I could smell it on his breath. He was not unable to go about his work greasing his wagon, but he went right on with it. His staggering at that time was not to the extent of making him fall down. * * *"

174 S.W.—19

J. T. Woolery, a witness for defendant, testified:

"He was a man that I would call a drinking man. He was addicted to the use of intoxicating liquors; in other words, he used it to excess."

According to other testimony, which was uncontradicted, the body of the deceased was found a few feet south of the place where Otis Blair said he sat when that witness left him to go home, and blood stains and fragments of flesh were found between that spot and the body. As noted already, the cars were moving south, and naturally would tend to drag or push the body in that direction. When picked up from the track deceased was alive and conscious, but died very shortly thereafter without making any statement accounting for the accident.

None of defendant's employés who were operating the train was called as a witness upon the trial, which occurred more than three years after the accident, and neither plaintiffs nor defendant offered any explanation for failure to procure such testimony.

As a predicate for the claim that defendant owed the duty to keep a lookout for pedestrians upon the switch where the accident occurred, plaintiffs alleged that long prior to the accident that part of the track had been used "as a place of resort and passway by the public, with defendant's knowledge, and with the knowledge of defendant's agents and servants in charge of said engine and train." Several witnesses testified that persons working in that vicinity and others of the public had been in the habit of walking along the switch track, and that it was a common practice for boys to frequent the grounds around the elevator and the switch track for the purpose of shooting pigeons there congregating in quest of grain. But it was also shown beyond controversy that a road extended from the boulevard south to a point between the plants of the furniture company and the elevator, which was approximately parallel with the switch track and a short distance from it. This road was extensively traveled by teams and vehicles and by employés working at those two plants. No evidence was introduced to show express permission of the railway company for use of the track by the public, and, according to the uncontradicted testimony of the manager of the grain company, that company did not authorize or acquiesce in such use of the switch.

Between the place of the accident and the place north of the boulevard where the cars were shunted and turned loose to run to the elevator, the view was unobstructed; and by experiments made before the trial it was shown without controversy that from the spot where the cars were turned loose the persons in charge of the engine could have seen the deceased sitting in the place where Otis Blair testified he last saw him prior to the accident, if they had expected that some

one might be in that position and had looked to discover his presence, if there. The only use made of the switch by appellant was the handling of cars for the Empire Grain Company, and, according to testimony of some of the witnesses, switching cars to the elevator on Sundays was unusual. According to the testimony of others, no whistle was ·sounded nor other character of warning given at the time the cars were shunted across the boulevard towards the elevator, nor while they were approaching the elevator after being so shunted.

Appellant insists that it was conclusively shown, as a matter of law, that deceased was guilty of negligence proximately contributing to his injury, and upon that contention bases an assignment of error to the action of the trial court in refusing its request for an instructed verdict. Many decisions of our appellate courts are cited in support of this assignment, such as Roper v. Texas Central Ry., 55 Tex. Civ. App. 620, 119 S. W. 696; Hancock v. G., C. & S. F. Ry., 99 Tex. 613, 92 S. W. 458; Smith v. I. & G. N. Ry., 34 Tex. Civ. App. 209, 78 S. W. 557; T. & P. Ry. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; St. L. & S. W. Ry. v. Shiflet, 98 Tex. 326, 83 S. W. 677; Tex. Midland Ry. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; M., K. & T. Ry. v. Malone, 102 Tex. 269, 115 S. W. 1158; Massey v. I. & G. N. Ry., 162 S. W. 371. All those cases were suits for damages for personal injuries to persons struck by trains on railway tracks, and in each case it was held, as a conclusion of law, that the person injured was guilty of negligence which contributed to his injury, and which barred a recovery, notwithstanding the negligence of the railway company in inflicting the injury. In some of those cases the conclusions of contributory negligence were based solely upon findings that the injured persons were trespassers, and in other cases upon findings that from all the facts no other reasonable conclusion could be deduced.

Appellees have cited a number of decisions of our higher courts in suits for damages for personal injuries inflicted under like circumstances, in each of which it was held that the issue of contributory negligence of the person injured was for the jury's determination, and that the court could not say, as a conclusion of law, that such negligence had been established. Some of those cases are: G., C. & S. F. Ry. v. Matthews, 99 Tex. 160, 88 S. W. 192; R. G., S. M. & P. Ry. v. Martinez, 39 Tex. Civ. App. 460, 87 S. W. 853; Texas Midland Ry. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90; F. W. & D. C. Ry. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 198; F. W. & D. C. Ry. v. Broomhead, 140 S. W. 820. To which list may be added Thompson & Ford Lumber Co. v. Thomas, 147 S. W. 296.

[1] By article 1971 of 2 Vernon's Sayles' Tex. Civ. Statutes, the submission to a jury of issues which are not controverted is forbidden. And it is a familiar rule established by a long line of decisions of our appellate courts that, under some circumstances at least, a judgment will be reversed for the error in submitting to the jury issues of fact contrary to that statutory inhibition.

[2] The test for determining when proof of negligence is uncontroverted, leaving that issue to be decided by the court, and not by the jury, is furnished by our Supreme Court in Choate v. S. A. & A. P. Ry., 90 Tex. 88, 37 S. W. 319 (local citation), and other decisions there cited, in the following language:

"Negligence, whether by the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. In other words, to authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

[3] It is well settled that a railroad company is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injuring persons upon the track at such places and upon such occasions as one of ordinary prudence would expect to find them; and whether such persons are trespassers or rightfully upon the track makes no difference in the determination of the issue of the company's negligence in that respect, considered separately and apart from issues of contributory negligence of the person injured. T. & P. Ry. v. Watkins, 88 Tex. 20, 29 S. W. 232; M., K. & T. Ry. v. Malone, 102 Tex. 269, 115 S. W. 1158; St. L. & S. W. Ry. v. Shiflet, 98 Tex. 326, 83 S. W. 677.

[4, 5] It is also a general rule, subject to exceptions, that a trespasser upon a railroad is guilty of contributory negligence as a matter of law which bars a recovery for injury by a train, in the absence of any showing that the persons in charge of the train discovered his peril in time to avoid injuring him, and were guilty of negligence in failing so to do. T. & P. Ry. v. Watkins, 88 Tex. 20, 29 S. W. 232; 2 Thompson, Com. Law of Negligence, § 1747. Minors under the age of discretion (I. & G. N. Ry. v. Garcia, 75 Tex. 583, 13 S. W. 223) and other persons who without fault of themselves are mentally irresponsible for exposing themselves to such dangers (H. & T. C. Ry. v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632), are instances of exceptions to that general rule. It is a further rule well established that the act of going upon a railroad in pursuance of a lawful right so to do, for instance, at a public crossing, or when the railroad company has expressly or impliedly licensed the act, is not negligence per se. G., C. & S. F. Ry. v. Matthews, 99 Tex. 160, 88 S. W. 192, and authorities there cited.

In Railway v. Malone, supra, our Supreme Court held that Malone, who, while crossing a railway bridge, was struck by a passing train at night under circumstances negativing license to the public from the railway company to so use the bridge, was a trespasser, and therefore guilty of negligence as a matter of law which precluded a recovery for the injury.

In Texas Mid. Ry. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, supra, our Supreme Court quoted with approval the following language used in G., C. & S. F. Ry. v. Matthews, 100 Tex. 68, 93 S. W. 1068:

"An implied permission, such as is claimed, to use a railroad track as a footpath, may relieve the person enjoying it of the imputation of being a trespasser, but it does not relieve the place of its inherent dangers, nor exempt the traveler from the duty to act with ordinary prudence. When he voluntarily chooses the dangerous pathway, instead of a safe one beside it, we can see no escape from the conclusion that he is guilty of negligence, if there be no justifying or excusing circumstances."

We believe the qualifying language "if there be no justifying or excusing circumstances," which concludes the foregoing quotation, suggests a solution of some, at least, of the supposed conflicts between some of the decisions referred to above, which cannot be solved upon any other theory. In keeping with the ever-varying circumstances of human experience the facts of different cases differ as the leaves of the forest, and in applying the law as announced in other decisions a substantial similarity of salient facts is all that may be expected.

Keeping in mind the general principles noted already and the qualification of the general rule last quoted, a close analysis of the controlling facts of the Byrd and other cases cited by appellant, and the salient facts of those cases relied on by appellees, which, upon a casual consideration, seemingly present an opposing view, will disclose conditions of such dissimilarity that the supposed conflicts disappear. Lack of time and a desire to avoid undue length of this opinion forbid any extended review of appellees' authorities, but we shall refer briefly to some of them.

F. W. & D. C. Ry. Co. v. Longino, decision by this court reported in 54 Tex. Civ. App. 87, 118 S. W. 198, and decision by Supreme Court reported in 103 Tex. 250, 126 S. W. 8, and the case of F. W. & D. C. Ry. Co. v. Broomhead, 140 S. W. 820, by the Court of Civil Appeals for the Fourth District, and in which a writ of error was denied by our Supreme Court, are specially stressed by appellees as supporting the judgment.

In the first of those cases Longino was struck by a train while traveling on foot upon the railway track situated in North Ft. Worth. The evidence tended to show that there were other ways of travel by which he could have reached his destination, although not so convenient for him. But the evidence also tended to show the following circumstances in his favor: Noise of another train upon another track prevented him from hearing the approach of the train which injured him. The accident happened while he was running down the track, and he had gone only about 150 yards from the point where he had entered upon it. When he went upon the track a companion traveling with him looked and listened for a train in the direction the one which inflicted the injury came and discovered none. By reason of his injury plaintiff's memory was so impaired that he could not recall going upon the track or anything happening thereafter, but from all the facts and circumstances in evidence the court indulged the inference that before going on the track he took the same precautions to discover whether a train was coming as did his companion, and neither saw nor heard one coming. Furthermore, there was evidence tending to show that the railway track had been commonly and habitually used by the public as a pathway for travel by pedestrians, with the knowledge and acquiescence of the defendant railway company, and a finding of those facts was by the trial court's charge made one of the necessary conditions of a verdict in favor of Longino. Under the facts so found Longino was a licensee, and not a trespasser; neither could it be said that there was an absence of circumstances tending in other respects to rebut the prima facie showing of contributory negligence on his part in voluntarily exposing himself to the known danger of traveling upon the track.

The case of F. W. & D. C. Ry. Co. v. Broomhead, 140 S. W. 820, is distinguishable from the decisions cited by appellant in like manner as the Longino Case. As noted in the opinion in that case, the charge given the jury upon the trial was in practically identical terms with the charge in the Longino Case, and the verdict of the jury, read in the light of the charge, shows a finding that Broomhead, who was struck by a train and killed while walking along the railway outside of the track proper, but near the end of the ties, was a licensee, and not a trespasser. And in approving the charge the Court of Civil Appeals expressly stated that it was supported by the facts. It thus appears that Broomhead was not a trespasser, and his act in traveling upon the track was not negligence per se. The court further held, in effect, that the jury's further finding that Broomhead was not guilty of contributory negligence was supported by the evidence.

Other cases cited by appellees are also distinguishable from appellant's authorities by reason of the fact that the persons injured were also rightfully upon the track when injured. Some of those cases are Railway v. Matthews, 99 Tex. 160, 88 S. W. 192; Railway v. Martinez, 39 Tex. Civ. App. 460, 87 S. W. 853; Railway v. Smith, 87 Tex. 348, 28 S.

W. 520; Railway v. Matula, 79 Tex. 577, 15 S. W. 573; Railway v. Wright, 62 Tex. 515.

We deem it proper to refer to another case not cited by appellees. It is Thompson & Ford Lumber Co. v. Thomas, 147 S. W. 296, which was decided by the Court of Civil Appeals for the First District, and in which a writ of error was denied by our Supreme Court. That decision is as cogent for appellees perhaps as any authority cited in their briefs, but it is not in conflict with decisions cited by appellant, since the opinion in that case shows express findings that Thomas, the person injured on the railway track, was not a trespasser, and that the facts warranted a finding by the jury that he was not otherwise guilty of contributory negligence.

In Railway v. Shiflet, 98 Tex. at page 331, 83 S. W. at page 678, our Supreme Court said:

"We do not understand that persons become licensees who, without the express or implied permission of a railroad company, habitually use its track as a convenience in passing from one point to another. There was no express permission shown in this case, nor do we think such permission can be implied from the mere fact that persons were accustomed to use the track as a pathway without objection on part of the defendant company. That no benefit could accrue to it from such use is apparent. On the contrary, it is but reasonable to suppose that the presence of persons walking on the track would be calculated to interfere with the operation of the trains, and would therefore be objectionable. A railroad company has no practical means of preventing a use of this character. It would require a small army to picket a long line of railroad to prevent trespasses upon it. Trespassers cannot be prosecuted for the wrong, for it is not a penal offense under our law. A license, whether express or implied, must proceed from the fact of some one having authority to grant it; and we think, in the absence of proof, it should not be presumed that the servants of a railroad company, who operate its trains, have such authority. Therefore we are of the opinion that a license should not be implied from the mere fact that persons were accustomed to use the track as a passway, or from the further fact, that the conductor or engineer knew of such custom."

In many other decisions which might be cited, some of which were by our Supreme Court, and others by our Courts of Civil Appeals, in which writs of error were denied by our Supreme Court, recoveries have been sustained for injuries to persons by trains on railway tracks, upon the theory that they were licensees, and in which cases apparently the only proof of such license consisted in the public use of the track in that manner. In at least a majority of these cases there is no specific reference to the question whether or not such use of the tracks was so notorious and at such places as to warrant a finding that it was known to, and acquiesced in by, some officer or agent of the railway company with authority from the company to give such consent; but it is quite apparent from the opinions that the proof upon that issue was considered sufficient to show such notice.

To say the least, the decision in Railway v. Shiflet, supra, would tend strongly to support a conclusion of law in the present case that George West was a trespasser on the switch track at the time of his injury; since the evidence relied on in the two cases to show a license to the public to use the tracks as walkways was substantially the same.

[6] But whether or not that conclusion would be correct we do not determine, since, clearly, deceased must be held a trespasser, and therefore guilty of contributory negligence as a conclusion of law, for the reason that there was a total lack of evidence to show that any one at any time had ever used the track in the manner he was using it at the time of his injury; hence no possible support for the claim that he was so using the track with the knowledge and permission of the railway company, and was therefore a licensee. Railway v. Malone, 102 Tex. 269, 115 S. W. 1158; Smith v. Railway, 34 Tex. Civ. App. 209, 78 S. W. 557. Furthermore, in the absence of proof of a prior public use of the track in that manner, we gravely doubt the sufficiency of the evidence to support an affirmative finding by the jury on either of the two issues of negligence on the part of the railway company which were submitted in the court's charge as a basis for a recovery. Railway v. Malone, supra; Smith v. Railway, supra.

[7] We are of opinion further that, even though it should be held that George West was not a trespasser, and hence not guilty of negligence by reason of that fact, and even though it could be said that he, while duly sober, was walking or standing, and not sitting, upon or by the side of the track when he was struck, nevertheless he must be held guilty of contributory negligence as a conclusion of law, which bars a recovery, since the record is barren of any fact or circumstances which tend in any manner to justify or excuse him from voluntarily exposing himself to the known danger of being run over by cars that might be switched into the elevator shed. Railway v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; S. & E. T. Ry. v. Dean, 76 Tex. 73, 13 S. W. 45; Holt v. Tex. Mid. Ry., 160 S. W. 327; Roper v. Ry., 55 Tex. Civ. App. 620, 119 S. W. 696; Bennett v. S. L. S. W. Ry., 36 Tex. Civ. App. 459, 82 S. W. 333; State v. Maine Cent. Ry., 76 Me. 357, 49 Am. Rep. 622; Hancock v. G., C. & S. F. Ry., 99 Tex. 613, 92 S. W. 456.

[8] Appellees contend that the jury had the right to indulge certain inferences of fact, such as that the operatives of the train, who did not testify, had told deceased when other cars were switched in earlier in the day that there would be no more switching on that day, and that deceased relied on that assurance; that deceased had never known cars to be shunted down the track before without warning; and the further inference

that the operatives saw West before they sent the cars down the track. The inferences suggested amount to no more than surmises or conjectures, and reasonably could not be given any probative force. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Davis v. G., C. & S. F. Ry., 161 S. W. 932.

[9] Appellees further ask that, in the event of a reversal of the judgment, the cause be remanded for another trial, at all events, upon the issue of negligence after the peril of deceased was discovered by those operating the train. Upon the last trial there was no basis for the submission of that issue, in that no evidence was introduced to show that those operatives saw the deceased at the time they sent the cars down the switch track. Appellees insist that there was evidence sufficient to sustain a finding that, by the exercise of ordinary care, those employés could and would have seen deceased before they shunted the cars and in time to avert the accident, and they contend that such evidence supported their plea of negligence after discovered peril. Such evidence, if any, did not establish even a prima facie right of recovery upon the issue last referred to, since an actual discovery of the peril of deceased at the time the cars were turned loose was an indispensable predicate for relief upon that issue. T. & P. Ry. v. Breadow, 90 Tex. 26, 36 S. W. 410; T. & P. Ry. v. Staggs, 90 Tex. 458, 39 S. W. 295.

[10] In the absence of some prima facie showing of such discovery, no inference could be indulged in plaintiff's favor from appellant's failure to introduce said employés as witnesses, especially in the absence of any suggestion in the record that their testimony was not as available to plaintiffs as to the defendant, if available at all. T. & P. Ry. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049.

[11] And as no exception was presented to the charge, which, in effect, affirmatively excluded a recovery upon that issue, appellees must be held to an approval of that instruction. 2 Vernon's Sayles' Tex. Civ. Stats. art. 2061; Cleburns Street Ry. v. Barnes, 168 S. W. 991.

The total failure of plaintiffs to sustain the affirmative of that issue by evidence, with no suggestion of excuse for such failure, and their approval of the instruction of the court last mentioned, constitute essentially, an abandonment of the issue and negative any equitable basis for the contention that they should be given another day in court for the purpose of litigating that issue.

For the reasons indicated, the assignment of error to the court's refusal to give to the jury appellant's requested peremptory instruction for a verdict in its favor is sustained.

The judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.