## UNITED STATES *v*. SEARCEY.

*(District Court, W. D. North Carolina.* November, 1885.)

1. **CRIMINAL LAW—CORPUS DELICTI.**

    In all trials for crime the prosecution must prove to the satisfaction of the jury that a crime has been committed before the jury proceed to inquire as to who is the criminal.

2. **EVIDENCE—PRESUMPTION DEFINED.**

    A presumption is a probable inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation, and coincidence of facts and circumstances with each other.

3. **SAME—KINDS OF PRESUMPTIONS—CONCLUSIVENESS.**

    When a fact shown in evidence *necessarily* accompanies the facts in issue, it gives rise to a strong presumption as to the existence of the facts to be proved. If the fact in evidence *usually* accompanies the fact in issue, it gives rise to a probable presumption of the existence of the facts to be proved. If the fact shown in evidence only *occasionally* accompanies the fact in issue, it gives rise only to a slight and insufficient presumption; but even this fact may, in connection with other relevant and consistent facts and circumstances, constitute an element in circumstantial evidence.

4. **SAME—PRESUMPTIONS OF LAW AND FACT.**

    Presumptions are of law or of fact. Presumptions of law are usually founded upon reasons of public policy and social convenience and safety which are warranted by the legal experience of courts in administering justice, while presumptions of fact result from the proof of a fact; or a number of facts and circumstances which human experience has shown are usually associated with the matter under investigation.

5. **SAME—PROVINCE OF COURT AND JURY.**

    While the court may always instruct the jury as to the force and effect of legal presumptions, presumptions of fact must always be drawn by the jury; and every fact and circumstance which tends to prove any fact which is evidence of guilt is admissible in evidence on the trial.

6. SAME—PRESUMPTIONS FROM CONNECTED FACTS.

Where presumptions arise from a number of connected and dependent facts, every fact essential to the series must be proved.

7. SAME—CIRCUMSTANTIAL EVIDENCE.

Circumstantial evidence consists of a number of disconnected and independent facts which converge towards the fact in issue as a common center.

8. SAME — CIRCUMSTANCES PROVED BY SEVERAL WITNESSES — WEIGHT OF EVIDENCE.

When circumstantial evidence consists of a number of independent circumstances coming from several witnesses and different sources, each of which is consistent and tends to the same conclusion, the probability of the truth of the fact in issue is increased in proportion to the number of such circumstances.

9. CRIMINAL LAW—REASONABLE DOUBT.

The jury must not be satisfied by a mere probability of the truth of the charges in the indictment, but the evidence must produce in their minds an assurance and certainty of guilt beyond a reasonable doubt, before they can pronounce the accused guilty.[1]

Indictment.

*H. C. Jones*, U. S. Atty., for the United States.

*J. W. Bowman*, *W. S. Malone*, and *A. M. Erwin*, for defendant.

DICK, J., (*charging jury.*) The counsel of defendant stated correctly a well-settled principle of law and rule of evidence which arises in the commencement of your investigation. In all trials for crime, the prosecution must prove, to the satisfaction of a jury, that a crime has been committed, before the jury proceed to inquire as to who is the criminal. This elementary and conservative principle has always been regarded as very important in cases involving the life and liberty of the citizen, and it has generally been strictly observed in the courts.

The offense charged in this indictment is the breaking into a distillery warehouse, and gaining access to the contents therein, in the absence of the proper officer. You will first proceed to inquire as to whether the offense charged was committed, and also as to the time when committed, as this fact is very important and material in applying the circumstantial evidence relied on by the prosecution as the ground of conviction. As there is no direct evidence of the breaking and entering into the warehouse, you must consider the facts proved, and determine whether they give rise to presumptions and inferences sufficiently clear and conclusive as to fully satisfy you that the offense charged was committed. In criminal trials, juries, in their investigations, often have to rely on presumptions and circumstantial evidence, as persons who commit crimes usually seek the security of secrecy and darkness to perpetrate their unlawful acts. The facts relied on as the foundation of presumptions, and as constituting the basis of circumstantial evidence, must always be clearly proved.

I will briefly explain to you the legal doctrine of presumptions. A presumption is a probable inference, which common sense, enlightened by human knowledge and experience, draws from the connec-

[1]See note at end of case.

tion, relation, and coincidence of facts and circumstances with each other. When a fact shown in evidence necessarily accompanies the fact in issue, it gives rise to a strong presumption as to the existence of the fact to be proved. If the fact in evidence *usually* accompanies the fact in issue, it gives rise to a probable presumption of the existence of the fact to be proved. If the fact shown in evidence only *occasionally* accompanies the fact in issue, it gives rise only to a slight and insufficient presumption; but even this fact may, in connection with other relevant and consistent facts and circumstances, constitute an element in circumstantial evidence. There is a difference between the legal doctrine of presumptions and evidence which is purely circumstantial. There are presumptions of law and presumptions of fact. Presumptions of law are usually founded upon reasons of public policy, and social convenience and safety, which are warranted by the legal experience of courts in administering justice. Some of these presumptions have become established and conclusive rules of law, while others are only *prima facie* evidence, and may be rebutted. The court may always instruct a jury as to the force and effect of legal presumptions. Presumptions of fact must always be drawn by a jury; and every fact and circumstance which tends to prove any fact which is evidence of guilt is admissible in evidence on the trial of a case. Presumptions of fact result from the proof of a fact, or a number of facts and circumstances, which human experience has shown are usually associated with the matter under investigation.

Circumstantial evidence, strictly speaking, consists of a number of disconnected and independent facts, which converge towards the fact in issue as a common center. These concurrent and coincident facts are arranged in combination by a mental process of reasoning and inference, enlightened by common observation, experience, and knowledge. Where presumptions arise from a number of connected and dependent facts, every fact essential to the series must be proved. Such evidence is like a chain, in which no link must be missing or broken which destroys its continuity. Circumstantial evidence is, like a wire cable, composed of many small associated but independent wires. Wire cables are often used to sustain ponderous bridges over rivers. The strength of the cable depends upon the number of wires which are combined, but some of the wires may be broken, and yet the cable be sufficiently strong to uphold the structure. As no chain is stronger than its weakest link, a chain is less reliable when it has a great number of links, but a wire cable is strengthened by an increase in the number of its wires. This combination of attenuated wires may be stronger than a solid rod of iron of the same size which may have flaws affecting its strength. When circumstantial evidence consists of a number of independent circumstances, coming from several witnesses and different sources, each of which is consistent, and tends to the same conclusion, the probability of the truth of the

fact in issue is increased in proportion to the number of such circumstances.

In the case before you there are no conclusive presumptions of law. There is a legal presumption as to the innocence of the defendant, and that continues in his favor until you become fully satisfied as to his guilt. There are presumptions of fact as to the breaking and entering the warehouse, and as to the time when the act was done. The evidence as to the person who did the breaking is entirely circumstantial, and you must consider the nature of the circumstances in evidence, and the inferences which they suggest, and determine the question whether they are sufficiently strong to satisfy you beyond a reasonable doubt that the defendant is guilty as charged in the indictment.

The witness Williams testified that he was the owner of the warehouse, and had suspended operations in his distillery in September, 1883. At the time of suspension there were eleven packages of whisky in the warehouse, and on each of them there was a warehouse stamp, the serial number and name of the owner. The witness went to his warehouse several times with the store-keeper, and withdrew some packages in the manner required by law. He had not visited the warehouse for three months previous to the thirteenth of February, 1884. On the morning of the fourteenth of February, 1884, a barrel of whisky was found above a half mile from the warehouse, near the public road on the way to Hendersonville. This barrel was properly marked for said warehouse, and about 10 gallons of whisky had been taken out. The witness, hearing that his warehouse had been broken and entered, went to it with the store-keeper on the sixteenth of February, and found the door locked; but he noticed that the staple had been drawn, and was not driven back to its former depth in the facing, and there were marks on the door indicating that some kind of a prize had been used to draw out the staple. On opening the warehouse he discovered that six packages had been taken away.

There is a well-settled rule of law in cases of larceny: That upon proof that a larceny has been committed, and that the property stolen was shortly afterwards found in the possession of the defendant, a presumption arises that he obtained the property feloniously. This presumption is strong if the finding is very soon after the taking, and the weight of the presumption diminishes as the time of finding becomes more distant from the time of taking. This same rule has also been applied as evidence of guilt, in cases of arson and burglary, where property known to have been in a house at the time of burning or breaking has been soon afterwards found in the possession of a person charged with the crime.

In this case, as the barrel of whisky was not found in the possession of any person, no legal presumption arises as to who broke and entered the warehouse.

The finding is a fact connected with the transaction under investigation, and may constitute one of a series of circumstances tending to show the criminal actor, and when the act was done. No person had a right to enter the warehouse in the absence of the store-keeper, and no package could be rightfuly removed without having a tax-paid stamp affixed. As the barrel found on the side of the road on the morning of the fourteenth of February had no tax-paid stamp affixed, you may well conclude that it had been unlawfully removed from the warehouse.

The witness Logan testified that he passed along the road on the evening of the thirteenth of February, and saw no barrel in the place where it was found on the morning of the 14th. You will consider this evidence in connection with the fact that the barrel was on the public road, exposed to public view, in deducing the inference as to the time when the barrel was placed on the spot where it was found.

If you are fully satisfied from the evidence that the warehouse was broken open on the night of the thirteenth of February, you will then proceed to inquire who did the breaking. The evidence shows that the night of the 13th was dark and rainy. The first inquiry which will naturally suggest itself to your minds is whether there were tracks of any kind around or near the warehouse. Upon this point there is no evidence, and it does not appear what was the nature and condition of the ground,—whether it was hard and covered with decayed herbage, or soft, and capable of receiving impressions from footsteps or the wheels of any kind of vehicle. The warehouse was situated a short distance from the bank of Broad river, and there was a ford near by leading to the public road on the opposite bank of the river. The counsel of defendant insisted in argument that the removal of a number of large and heavy barrels of whisky would necessarily have left some traces of the depredation. The theory of the district attorney, founded upon some evidence, is that a wagon could be turned around in the ford, and be backed to the bank of the river, near warehouse, and then be loaded by means of skids, and no perceptible impression be left on the ground. These suggestions of counsel are worthy of your consideration in connection with the evidence. There is evidence of freshly-made wagon tracks in the public road, and that those tracks were traced along the road, and from thence through a plowed field in the direction of the house of defendant, but no witness followed the tracks to the house.

On the afternoon of the thirteenth of February the defendant borrowed a one-horse wagon from the witness Hayden, for the professed purpose of hauling rails the next day. Defendant went for the wagon, through the rain, some time after dark, and next day he only hauled a small load of plank from a saw-mill. When the wagon was returned to the owner, the rear axle was broken, and the ends of the bottom planks of the wagon-bed were broken, and split in two places, two or three feet apart. The district attorney insisted that these in-

juries to the wagon-bed were caused by the ends of skids, under the weight of heavy barrels. The counsel of defendant insisted that such damage was done by the load of plank hauled from the saw-mill.

The witness Littlejohn testified that on the morning of the 14th she went to house of defendant, and saw his clothes, wet and muddy, hanging on the yard fence.

The witness Hodges testified that, about three months after the alleged breaking into the warehouse, he found an illicit distillery in the woods about a half mile distant from the house of defendant; that, as he was approaching the distillery, he heard the defendant call out to some one directing him to "bring away the still," and witness soon met the witness Watson with a still on his back. When he entered the distillery he found a whisky barrel in use as a "singling tub." One head was out, and near by he found a barrel head, on which was a part of the name and serial number of the Williams warehouse. An effort had been made with some dull instrument to obliterate these marks.

The witness Howell testified that the defendant told him that he had seen the barrel head in Watson's distillery, and had attempted to cut off the marks with his knife.

If you believe this testimony, you may consider the motive of the defendant in endeavoring to efface those marks on the barrel head. The actions of rational persons are usually prompted by some motive, and from the actions you can generally correctly infer the motives from which they spring.

The witness Watson testified that he had no interest in the distillery at which he was found by the deputy collector Hodges; but he was arrested, tried, and convicted for the offense of illicit distilling at that place. He further stated that in the summer of 1884 he went to the house of defendant, and on request promised to assist him in removing a barrel of whisky to the house of Mrs. Gibbs. The defendant carried him to a place in an old field, where a barrel was buried in the ground, and was covered with a pile of old rails. There was a warehouse stamp on the barrel, but he could not speak of the marks on the barrel, as he was unable to read. I will not make further reference to the testimony of Watson, as I feel sure that you remember all that he said about the transactions at the house of Mrs. Gibbs. He was implicated with the defendant in unlawful transactions, and you can give his testimony such credit as you may think that it deserves.

I will not state fully the testimony of the witness Gibbs, as to defendant selling whisky in the woods near his house out of marked barrels. I will not attempt to recapitulate the testimony of the colored witnesses introduced by the district attorney. These witnesses had some difficulties and disputes with the defendant, and their feelings are somewhat hostile to him.

You may properly consider the conversations of the defendant

with Commissioner Thorn and some of the witnesses for the prosecution previous to the preliminary investigation of the charges in this case before the commissioner. A jury may legitimately draw inferences from attempts on the part of a defendant to prevent a fair or impartial investigation, by endeavors to tamper with witnesses for the prosecution, or by improper propositions to officers of justice.

The rules of evidence and fair argument warranted the district attorney in saying to you that the force of suspicious circumstances, shown in evidence, is augmented whenever the defendant attempts no explanation of facts which he may reasonably be presumed to be able to explain by testimony which he could conveniently have introduced.

The theory presented by the defense is that Williams plundered his own warehouse in the absence of the store-keeper. It was shown in evidence that Williams had two grog-shops, situated, one about 10 miles east, and the other about 10 miles west, on the public road passing near the warehouse; that a short time previous to the thirteenth of February, 1883, he was seen passing and repassing the residence of the witness Whitesides on said road, and on one occasion he had a large keg in his buggy.

The witness Harris testified that a day or two after the alleged breaking into the warehouse, his brother, while hunting partridges, found an empty barrel in the woods, having on it the mark of the Williams warehouse, not far from the said public road; that he communicated the fact to Williams, and carried him to the place where the barrel was found. When Williams had gone away, he found a place where a colt had been previously tied in the woods, and a man's foot-prints near by, made by a No. 8 shoe. He measured these foot-prints and tracks, and then compared them with Williams' foot-prints and the tracks of the colt which Williams rode, and found an exact correspondence. It is also in evidence that the young man who found the barrel rode a mule, and he is not present as a witness, and there is no evidence as to the size of his shoes and the tracks of the mule. No reason is assigned for the absence of this young man.

The witnesses of the defendant further proved that he had, in the spring of 1884, purchased two barrels of whisky from McFarland, a regularly authorized distiller.

I have not recapitulated all the facts and circumstances shown in evidence by the prosecution and defense. I feel confident that 12 minds will remember the entire testimony more fully and accurately than I do.

You have listened with great patience and attention during the progress of this trial, and I feel sure that you will impartially discharge the important duty imposed upon you by the law, and I hope that you will come to a correct conclusion. You must not be satisfied by a mere probability of the truth of the charges in the indictment, but the evidence must produce in your minds an assurance and

certainty of guilt, beyond a reasonable doubt, before you can properly pronounce the defendant guilty.

## NOTE.

The guilt of the accused must be established beyond a reasonable doubt. Cornish v. Territory, (Wyo.) 3 Pac. Rep. 793. The rule requiring proof beyond a reasonable doubt does not require that the jury be satisfied beyond a reasonable doubt of each separate link in the chain of evidence, isolated from its connection with the other testimony. It is sufficient, taking the testimony all together, if the jury are satisfied beyond a reasonable doubt that the defendant is guilty. Bressler v. People, (Ill.) 3 N. E. Rep. 521. But in Marion v. State, (Neb.) 20 N. W. Rep. 289, it is questioned whether this rule applies to cases where the evidence relied upon to convict is purely circumstantial. See Walbridge v. State, (Neb.) 13 N. W. Rep. 209.

A reasonable doubt does not mean all doubt. U. S. v. Wright, 16 Fed. Rep. 112. The doubt must be a substantial, and not an imaginary or speculative, doubt. U. S. v. Keller, 19 Fed. Rep. 633. It must be such a doubt as a prudent and reasonable man would be likely to act upon in determining important affairs in life, People v. Dewey, (Idaho,) 6 Pac. Rep. 103; or, as has been said, "such a doubt as a man of ordinary prudence, sensibility, and decision, in determining an issue of like concern to himself as that before the jury to the defendant, would allow to have any influence whatever upon him, or make him pause or hesitate in arriving at his determination," Leonard v. Territory, (Wash. T.) 7 Pac. Rep. 872; "such a doubt as would cause a reasonable, prudent, and considerate man to hesitate and pause before acting in the graver and more important affairs of life," State v. Pierce, (Iowa,) 21 N. W. Rep. 195; and such a doubt as fairly and naturally arises in the mind of the jury after fully and carefully weighing and considering the evidence which has been introduced, viewed in all the light and circumstances surrounding the case. State v. Stewart, (Iowa,) 3 N. W. Rep. 99. And it must arise from a candid and impartial consideration of all the evidence in the case. State v. Pierce, (Iowa,) 21 N. W. Rep. 195.

A reasonable doubt is defined in People v. Guidici, (N. Y.) 3 N. E. Rep. 493, as "a doubt for which some good reason arising from the evidence can be given;" and in Minich v. People, (Colo.) 9 Pac. Rep. 4, as "such a doubt as would cause a reasonable man to hesitate and pause." Judge DICK says, in the recent case of U. S. v. Hopkins, *post*, 443, that "the inherent imperfection of language renders it impossible to define in exact and express terms the nature of a reasonable doubt. It arises from a mental operation, and exists in the mind when the judgment is not fully satisfied as to the truth of a criminal charge, or the occurrence of a particular event, or the existence of a thing."

A preponderance of evidence in a criminal case is not necessary to raise a reasonable doubt. State v. Porter, (Iowa,) 20 N. W. Rep. 168; State v. Red, (Iowa,) 4 N. W. Rep. 831. Neither the preponderance of evidence, nor the weight of preponderant evidence, is necessary to raise a reasonable doubt. See Walbridge v. State, (Neb.) 13 N. W. Rep. 209. And it has been said that "clearly proven" does not mean "beyond a reasonable doubt." State v. Stewart, (Iowa,) 3 N. W. Rep. 99.

An instruction to the jury directing them to determine the question of the fact of proof beyond a reasonable doubt, "just as they would determine any fact in their own private affairs," is not sufficient, Territory v. Lopez, (N. M.) 2 Pac. Rep. 364; and that it is error to charge that "reasonable doubt" means doubt suggested by or arising out of the proof made, and that in considering the evidence, and arriving at a verdict, "what is called 'common sense' is perhaps the juror's best guide."

It is not error to refuse to instruct the jury that if any one of them entertains a reasonable doubt of the defendant's guilt there must be an acquittal, State v. Witt, (Kan.) 8 Pac. Rep. 769; but it is error to instruct that "while each juror must be satisfied beyond a reasonable doubt, to authorize a conviction, such reasonable doubt, unless entertained by all the jurors, does not warrant an acquittal." Stitz v. State, (Ind.) 4 N. E. Rep. 145.

Each juror is to act upon his own judgment, and if he entertains a reasonable doubt is not required to surrender his convictions and render a verdict merely because the other jurors entertain no such doubt. State v. Hamilton, (Iowa,) 11 N. W. Rep. 5. Proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act in the most important concerns or affairs of life. Polin v. State, (Neb.) 16 N. W. Rep. 898.

Where a criminal charge is sought to be proved by circumstantial evidence, the proof must not only be direct, State v. Clemons, (Iowa,) 1 N. W. Rep. 546, but also consistent with the guilt of the accused, and inconsistent with any other rational conclusion. Walbridge v. State, (Neb.) 13 N. W. Rep. 209; People v. Davis, (Cal.) 1 Pac. Rep. 889.

It is not sufficient that the circumstances proved coincide with, account for, and therefore render probable the hypothesis sought to be established by the prosecution, but they must exclude to a moral certainty every hypothesis except the single one of guilt. People v. Davis, (Cal.) 1 Pac. Rep. 889. That testimony not believed does not raise a reasonable doubt. Binfield v. State, (Neb.) 19 N. W. Rep. 607. To establish the defense of an *alibi* preponderance of evidence is all that is required. Whether a defendant is entitled to acquittal if the evidence of the *alibi* is sufficient to raise a reasonable doubt of his guilt, *quære.* State v. Reed, (Iowa,) 17 N. W. Rep. 150. See State v. Hamilton. (Iowa,) 11 N. W. Rep. 5. It has been held that if there is evidence upon which a verdict of guilty might reasonably be founded, an appellate court will not interfere, whatever may be their opinion as to the weight or preponderance of the evidence. Cornish v. Territory, (Wyo.) 3 Pac. Rep. 793.