LUTEN et al. v. MISSOURI, K. & T. RY. CO. OF TEXAS. (No. 7450.)

(Court of Civil Appeals of Texas. Dallas. Feb. 5, 1916. On Motion for Rehearing, April 8, 1916.)

1. RAILROADS ⚖═309—PERSONS ON TRACK—DUTY OF ROAD.

A railroad company is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injuring persons upon the track at such places and upon such occasions as one of ordinary prudence would expect to find them, and whether such persons are trespassers or rightfully upon the track makes no difference in the determination of the issue of the road's negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 981; Dec. Dig. ⚖═309.]

2. RAILROADS ⚖═350(13)—USE OF CROSSING—NEGLIGENCE.

The act of a person going upon a railroad track at a public crossing or where the railroad has expressly or impliedly licensed the act, as by permitting the use of the place as a crossing, is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1166; Dec. Dig. ⚖═350(13).]

3. RAILROADS ⚖═350(32)—INJURIES AT CROSSING—QUESTIONS FOR JURY.

In a widow's action against a railroad for death of her husband at a crossing, issues wheth-

er deceased was killed at the crossing and whether the train operatives in striking him were guilty of negligence which was the proximate cause of his death, *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1190; Dec. Dig. ☞350(32).]

4. TRIAL ☞139(1)—DIRECTION OF VERDICT.

To authorize the court to take a material question from the jury, the evidence must be of such a character that there is no room for ordinary or reasonable minds to differ as to the conclusion to be drawn from it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341; Dec. Dig. ☞139(1).]

5. NEGLIGENCE ☞136(2)—QUESTION OF FACT AND LAW.

Negligence, whether by plaintiff or defendant, is generally a question of fact, and is a question of law for the court only when the act done is violative of some law or the facts are undisputed and admit of but one inference.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 279, 281; Dec. Dig. ☞136(2).]

6. RAILROADS ☞350(7)—INJURIES ON TRACK —NEGLIGENCE—QUESTION FOR JURY.

In a widow's action against a railroad for death of her husband at a crossing, whether the servants of the road in charge of its train failed to ring the bell or blow the whistle of the locomotive or otherwise give warning of its approach to the crossing, was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1161; Dec. Dig. ☞350(7).]

7. RAILROADS ☞350(7)—INJURIES ON TRACK — QUESTION FOR JURY — QUESTION OF FACT AND LAW.

In a widow's action against a railroad for death of her husband at a crossing, whether the train was being run without a headlight was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1161; Dec. Dig. ☞350(7).]

8. RAILROADS ☞350(7)—INJURIES AT CROSSING—QUESTION FOR JURY.

In a widow's action against a railroad for death of her husband at a crossing, the question whether the road's servants kept a proper lookout for persons about to use the crossing was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1161; Dec. Dig. ☞350(7).]

On Motion for Rehearing.

9. RAILROADS ☞348(1)—INJURIES AT CROSSING—CIRCUMSTANTIAL EVIDENCE.

It may be established by circumstances that a person was killed by a railway train at a public crossing through the negligence of the road's servants, and that the person killed was at the time in the exercise of due care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138, 1140, 1141; Dec. Dig. ☞348(1).]

10. EVIDENCE ☞54 — CIRCUMSTANTIAL EVIDENCE.

Circumstances establishing that a person was killed by a train at a public crossing through the negligence of the railroad's servants must be shown by direct evidence and cannot be inferred from other circumstances.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. ☞54.]

11. EVIDENCE ☞53—"PRESUMPTION OF FACT."

A "presumption of fact" is a probable inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation, and coincidence of facts and circumstances with each other, being always to be drawn by the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 73; Dec. Dig. ☞53.

For other definitions, see Words and Phrases, First and Second Series, Presumption of Fact.]

12. RAILROADS ☞348(2)—INJURIES AT CROSSING—DIRECTION OF MOVEMENT OF TRAIN—SUFFICIENCY OF EVIDENCE.

In a widow's action against a railroad for death of her husband at a crossing, evidence *held* sufficient to warrant the conclusion that the train which killed decedent was moving north.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1139; Dec. Dig. ☞348(2).]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by Mrs. E. E. Luten and others against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for defendant, plaintiffs appeal. Judgment reversed, and cause remanded.

Wear & Frazier, of Hillsboro, for appellants. Walter Collins, of Hillsboro, and Chas. B. Braun and Spell & Sanford, all of Waco, for appellee.

TALBOT, J. The appellant Mrs. Luten, for herself and as next friend of her minor children, brought this suit against the appellee, the Missouri, Kansas & Texas Railway Company of Texas, to recover damages sustained on account of the death of her husband, and the father of said children, E. E. Luten, who it is charged was killed by the negligence of appellee's servants on or about the 1st day of April, 1914. It is alleged, in substance, that the deceased, E. E. Luten, was struck and killed by one of appellee's trains at the intersection of its railroad track with a dirt road crossing; that said crossing had been constructed and maintained by the appellee, and commonly used by the public with the knowledge of appellee, a great many years next preceding the accident causing the death of the deceased, for travel; that the deceased resided near the said crossing, and while traveling along said dirt road and in the act of crossing the appellee's line of railway where it intersects said road he was negligently and with great violence struck by a rapidly moving train of appellee and instantly killed. The acts of negligence alleged are that appellee's servants in charge of said train carelessly and negligently failed to blow the whistle or ring the bell of the locomotive in approaching the crossing; that the servants in charge of said train negligently ran the train in approaching and passing over said crossing at a reckless and dangerous rate of speed and negligently cut off the steam and permitted the train in approaching the crossing to run without steam by reason of which it failed to make the usual and ordinary noise incident to the running of a train; that said servants negligently failed to keep a lookout for persons

about to cross or passing over the railroad at said dirt road crossing; that on the morning of the accident in which the deceased, Luten, lost his life a dense fog prevailed, and the said servants of appellee negligently failed to provide the locomotive drawing the train that struck and killed the said Luten with a headlight. It was alleged that for a long distance in approaching the crossing there was nothing to obstruct the view of appellee's servants, and that had they exercised proper care to discover persons about to pass over the crossing they could and would have seen the deceased in time to have avoided striking and injuring him by the use of ordinary care. The appellee answered, practically admitting that there was a dense fog the morning the deceased was killed, and that he was struck by one of its trains and knocked from the railroad track, receiving injuries thereby, from which he immediately died. Appellee denied, however, that it was guilty of any of the acts of negligence charged, and alleged that the deceased's death was due to his own negligence. When the evidence offered by the appellant was concluded, the court, upon motion of appellee, instructed the jury to return a verdict in its favor, which was done, and judgment entered in accordance therewith. From this judgment, the appellant has appealed.

The assignments of error complain of the action of the court in instructing a verdict for the appellee, and the sole question raised is whether the evidence adduced was sufficient to take the case to the jury. The deceased lived west of the appellee's railroad and about 400 yards northwest of the crossing in question. A short time before the accident causing his death he left home carrying a shotgun. The railroad where it intersects the dirt road leading from the deceased's house runs practically north and south, and the dirt road practically east and west. At this intersection of said roads the railway company had constructed and maintained for many years prior to the death of the deceased, Luten, the crossing in question, and the same had been commonly and habitually used by the public for travel during all those years. About 9 o'clock of the morning the deceased left home with his gun a train operated by the appellee's servants passed over the road crossing going north. At this time two reports of a gun at or near the crossing were heard by some of the witnesses who testified in the case, and immediately thereafter a train whistle and the sound of a bell was heard at or about the same point. In perhaps an hour or less time after this the body of the deceased, Luten, was found at the estimated distance of 40 or 45 feet north of the crossing and about 15 feet east of the railroad track. When found Mr. Luten was dead, his gun broken, and both barrels had been discharged. There was a wound on his right side below the arm and

shoulder blade, as described by the witness, "as big as your hand, just a cave-in, and the skin was broken farther around." The right leg was broken between the knee and ankle. The wound on the leg was "not exactly on the outside nor inside; more nearly on the outside than behind." He had some wounds on his face near his nose, on the right side of his face, also a cut place "kind of above his right ear." The deceased's hat was found on the ground about 15 feet north of the crossing and on the east side of the railroad bed. About 30 or 35 feet from the crossing and on the east side of the railroad track and bed and northeast of the road crossing, blood was found on the ground and at two or three places on the weeds. There was also at one place where blood was found an indentation in the ground as if some object had fallen there. There was another such place about 40 feet from the crossing. "The ground was awful wet and soggy," and there was mud and blood on the deceased's clothing." H. V. Adderhold, an undertaker, testified that he removed the clothing from the body of the deceased and examined the wounds on it. He said the deceased "had one wound on the right side, under the right arm on the right side, that it looked like something had struck it and made a wound there; that he noticed some wounds on the head, more in the temple, above the right ear and was in the hair running along the edge of the hair, and that he noticed another wound on his body, between the knee and the ankle; that his right leg was broken." The railroad bed or dump at the crossing was 10 or 12 feet high, and on the morning of the accident there was a very dense fog. Mrs. Luten heard the noise of the train as it passed and looked from the window of her house, but on account of the fog could not see the train. She saw no headlight. The deceased was a sober, industrious farmer. His hearing was defective, but if spoken to in a clear and distinct tone of voice he could carry on a conversation with another person a few feet away. No witness testified that he saw the accident or that he saw the deceased alive after he left home on the morning he was killed. No member of the train crew testified, and there is no direct or positive evidence showing that the presence of the deceased at or near the place of the collision was discovered by any one of them before the collision occurred.

[1, 2] It has been held more than once in this state that:

"A railroad company is guilty of actionable negligence in failing to exercise ordinary care to discover and avoid injuring persons upon the track at such places and upon such occasions as one of ordinary prudence would expect to find them; and whether such persons are trespassers or rightfully upon the track makes no difference in the determination of the issue of the company's negligence in that respect, considered separately and apart from issues of contributory negligence of the person injured." Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Railway Co. v. Malone, 102 Tex. 269, 115 S. W. 1158;

Railway Co. v. Shiflet, 98 Tex. 326, 83 S. W. 677; Railway Co. v. West, 174 S. W. 287.

It is also well settled that the act of a person going upon a railroad track at a public crossing, or where the railroad has expressly or impliedly licensed the act, is not negligence per se. Railway Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; Washington v. Railway Co., 90 Tex, 314, 38 S. W. 764; Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Railway Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342; Railway Co. v. West, supra. The crossing in question in the case at bar had not been laid out or worked by authority of the commissioners' court of the county, and if it was not a public crossing in that sense, it was, it seems, recognized by the railway company as such, and, if not so recognized, it was, beyond controversy, a place where persons habitually crossed the railroad with the knowledge, and, so far as the record shows to the contrary, without objection of appellee, and where its employés operating its trains over such crossing might expect persons to be at any time of the day. That the deceased was struck by one of appellee's trains and his death caused thereby is placed beyond dispute, and if at the time he was so struck he was attempting to pass over the crossing he was not a trespasser.

[3] But did the facts and circumstances in evidence call for a submission of the issues of whether the deceased at the time of the collision was at the crossing and whether the operatives of the train in striking him were guilty of negligence which was the proximate cause of his death for the determination of the jury? We have reached the conclusion they did. From the location of the wounds found upon the body of the deceased and the proximity of his hat and body to the crossing, together with other circumstances in evidence to be considered, it may reasonably be inferred that he was at the crossing when struck by the train. The conclusion is warranted that he traveled east after leaving his home along the road leading to the crossing until he reached the railroad, and that he was going straight across the track from the west to the east side thereof when the collision occurred, and not walking north in the direction the train was moving, is a reasonable, and not an improbable, deduction from the facts and circumstances proved. The serious wounds, if not all of them, that were inflicted upon the deceased were on his right side. This is a strong fact or circumstance tending to how that he was standing facing the east or moving directly across the railroad track when struck. It is clear that if he was walking north along the railroad track when struck, the wounds inflicted upon him would have been more directly on his back, and the back part of his leg. The fact that the wounds were on his right side is entirely consistent with the idea that he was standing or walking with that side of his body toward the approaching train when the col-

lision that cost him his life happened. True, it is possible or even probable that he may have turned his right side towards the train just before the collision, but that he did so is no more to be inferred from the established facts and circumtances than that he was going straight across the track. And while it is possible it is not very probable, it occurs to us that the deceased attempted to cross the railroad track north of the dirt road crossing, at or near where his body was lying when found. The railroad bed or dump at that point was 10 or 12 feet high, and evidently more difficult to pass over than at the road crossing, and there is nothing to indicate why he may have left the traveled road to cross the track at such a place. Moreover, his hat, as has been stated, was found within 15 feet of the crossing and his body at the greater distance of 35 or 40 feet therefrom, indicating that after being struck by the train he was carried, before being cast to the side of the tack, a distance of 20 or 25 feet. For it is an exceedingly fair inference that the deceased's hat was caused to fall from his head by the collision, and if it fell directly to the ground the location of the deceased's body indicates that it was pushed or thrown thereafter by the train the distance of 20 or 25 feet mentioned. Again, it is not without the range of probability that after the deceased was struck, his hat, after being dislodged from his head, was carried by the suction or agitation of the air produced by the running train some distance in the direction the train was moving, and this would suggest that he might have been at the crossing, or at least nearer to it than at the point where his hat was found when the collision occurred. At all events we think it cannot be said, from the facts and circumstances shown as a matter of law, that the deceased was not at the crossing when struck by the railway train.

[4] It has been repeatedly held in decisions of this state, that to authorize the court to take a material question from the jury, the evidence must be of such a character that there is no room for ordinary or reasonable minds to differ as to the conclusion to be drawn from it. Such was not, in our opinion, the character of the evidence adduced in this case. Whether the deceased, Luten, was at the road crossing when the collision causing his death occurred was an issuable fact for the determination of the jury.

[5-8] Likewise, whether the collision in question was the result of negligence on the part of the agents and servants of appellee in the operation of the train and the proximate cause of the death of E. E. Luten were also questions of fact for the decision of the jury.

"Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and

admit of but one inference regarding the care of the party in doing the act in question." Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63.

Now, "while the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that without negligence it would not have occurred"; and "where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care." Washington v. Railway Company, 90 Tex. 314, 38 S. W. 764. The train causing the death of Mr. Luten was under the management of appellee's servants. Some one of them may have seen the accident, but if so no explanation of how it occurred was made or attempted to be made. The crossing at which appellants claim it happened was from long-continued use a public crossing, or, if not, it was a place where the people in the neighborhood were constantly passing over appellee's road with the consent or without its objection, and where the injury to the deceased, or some injury of like character to some other person similarly situated, ought to have been foreseen by the agents operating its trains over said crossing, as a probable consequence of their negligence in failing to keep a lookout to discover and avoid injuring those about to pass over the crossing or otherwise to use proper care to prevent injury to them. At the time of the accident resulting in Luten's death a dense fog prevailed, and it is not unreasonable to conclude from the evidence that the train was being run without a headlight to enable the operatives thereof to discover objects on the railroad track. Mrs. Luten's testimony is to the effect on clear days trains passing over the crossing can be seen from her house; that on the day her husband was killed she looked but could not see the train on account of the fog, and that she did not see any headlight. The facts and circumstances in evidence also warrant the inference that the agents and servants of appellee in charge of the train failed to ring the bell or blow the whistle of the locomotive, or otherwise give notice or warning of its approach to the crossing. There was no testimony that the bell was rung or whistle blown before the train reached the crossing and two or three witnesses testified that if any such signal or warning of its approach was given they did not hear it. That they were in a position to have heard either the ringing of the bell or the blowing of the whistle at such time, if rung or blown, is conclusively shown by their testimony to the effect that they did hear the ringing of the bell and whistle of the locomotive immediately after hearing the re-

port of a gun, which the evidence clearly tends to show was the gun of the deceased, and that it was not discharged until the collision occurred. These were all questions, we think, for the jury, as was also the question whether the appellee's servants kept a proper lookout for persons about to use the crossing. The trial court was not authorized, under the facts and circumstances shown, to take either of them from the jury. In other words, we conclude that the evidence as a whole was sufficient on all material questions involved to require the submission of those questions for the decision of the jury, and therefore the trial court erred in directing a verdict for the appellee. We must not be understood, however, as intending that the jury, if the questions had been submitted to them, ought to have resolved either of the controverted issues in favor of the appellant. We regard the facts calling for a submission of the case to the jury as cogent, as were those in the case of Washington v. Railway Co., supra, and it is mainly upon the authority of that case that we base our conclusions in this case. That the case is strongly analogous to Washington's Case, and distinguishable from those cited and relied upon by appellee, is clear to us.

The judgment of the court below is reversed, and the cause remanded.

## On Motion for Rehearing.

[9-11] A careful reconsideration of this case upon appellee's motion for a rehearing has failed to convince us that we erred in holding that the evidence adduced was sufficient to require the submission of the issues presented by the pleadings to the jury impaneled for its trial for determination. The case, in our opinion, differs in important particulars from the case of Missouri Pac. Ry. Co. v. Porter, 73 Tex. 304, 11 S. W. 324, and is not ruled thereby, nor by either of the cases cited by counsel for the appellee. The well-settled rule that it may be established by circumstances that a person was killed by a railway train at a public crossing through the negligence of the railway company's servants, and that the person killed was, at the time, in the exercise of care for his own safety, is expressly recognized in the case mentioned. Such is simply the effect of our holding in the case at bar. That in such a case the circumstances must be shown by direct evidence, and cannot be inferred from other circumstances, and that "it is not admissible to go into the domain of conjecture, and to pile one presumption upon another, is not and has not by this court been questioned." The circumstances shown by the positive or direct testimony found in the record were sufficient, we think, to take this case to the jury on all material issues made by the pleadings. In other words, we hold that the probative force of the evidence is not so weak that it only raises a mere surmise or suspicion of the existence of the

facts sought to be established, but that the existence of such facts may be reasonably inferred from the circumstances shown. A presumption of fact is a probable inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation, and coincidence of facts and circumstances with each other. If the fact in evidence usually accompanies the fact in issue, it gives rise to a probable presumption of the existence of the fact to be proved, and presumption of fact must always be drawn by the jury. United States v. Searcey (D. C.) 26 Fed. 435; Kent v. People, 8 Colo. 563, 9 Pac. 852; Sears v. Vaughan, 230 Ill. 572, 82 N. E. 881. It cannot be said as a matter of law that the existence of the facts essential to appellant's right of recovery cannot reasonably be deduced from the facts and circumstances shown on the trial of this case. This being true, it was error to withdraw the case from the jury.

In our original opinion we stated, in effect, that a short time before the accident causing the death of E. E. Luten he left home carrying a gun, and appellee insists that such conclusion is not supported by any evidence. In carefully reviewing the testimony again, we fail to find any direct testimony to that effect; and if such conclusion is not a fair inference from the circumstances in evidence, then there is no evidence to support it. The absence of such evidence, however, is not of sufficient importance to require a change in the disposition we have made of the appeal.

[12] It is also contended that there is no evidence showing that the train which caused the death of the said Luten was going north. This is incorrect. The facts and circumstances in evidence make it very clear that it was. In addition to the facts pointed out in the original opinion it appears that the train that struck and killed the deceased carried his body to the town of Abbott. The witness T. E. Morgan testified that he lived at or near Abbott; that he knew Mr. Luten; that he passed the depot at Abbott the day Luten was killed; that he saw his body that day at Abbott; that the railroad company had it when he first saw it at the depot and that he assisted in unloading it. The witness H. H. Humphries testified that he lived south of Abbott in the neighborhood of and pretty close to where Mr. Luten lived; and that appellee's railroad track ran north and south at the point where the accident occurred is conclusively shown. The foregoing testimony, aside from other testimony in the record disclosing the facts and circumstances detailed in the original opinion, is amply sufficient to warrant the conclusion that the train in question was moving north.

We believe the proper disposition of the appeal has been made, and, so believing, the motion for a rehearing is overruled.